THEODORE C. BALLOU, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Upon hearing of a claim presented by B. to the Board of Claims these facts appeared. Prior to 1840 there was a sewer in J. street in the city of U., constructed by or under the authority of the city, into which the owners of lots adjoining the street drained their respective lots. In that year the state constructed a sewer in said street for the purpose of conducting the water from a weigh-lock on the Erie canal, and took up the old sewer. Those engaged in the construction of the state sewer requested the adjoining lot owners to point out places where they desired openings to be left in the sewer so that their drains could be connected therewith. In compliance with this request the complainant, who owned an adjoining lot, pointed out the places for such openings opposite his lot. The openings were left accordingly and through them the claimant thereafter drained his lot. Since the construction of the state sewer there has been no other sewer in the street or any other means by which the lots could be drained. In 1876 the state sewer became obstructed by deposits therein, causing the water to set back into the basement of a store on the claimant's premises. He gave the superintendent of the canal notice of this occurrence, requesting him to close the gate at the weigh-lock. This request was not complied with, and no action was taken on the part of the state to repair the sewer or remove the obstructions. Thereafter the water from the sewer again came into the basement, doing the damage complained of. The board decided that the claimant was not entitled to any damages. *Held,* error; that the state was bound to use reasonable care in keeping the sewer in repair, and in its management; and for damages caused by a neglect to perform this duty it was properly chargeable.

(Argued October 26, 1888; decided November 27, 1888.)

APPEAL from an award of the Board of Claims, made January 14, 1886, which awarded "nothing" on a claim for damages sustained by the testator of the claimant.

In December, 1877, the claimant was, and for about twenty years prior thereto had been, the owner of a parcel of land situate at the corner of John and Main streets in the city of Utica, known as "Ballou block." In the years 1876 and 1877 a portion of the block was occupied by the firm of John C. Hieber & Co., who were engaged in the business of buying

and selling drygoods. Prior to the year 1840 there was a sewer in John street constructed by or under the authority of the city into which the property owners along that street, including the claimant, drained their respective lots. About the year 1840 the state constructed a weigh-lock upon the Erie canal at or near the head of John street. After that, for the purpose of exhausting the water in the lock when boats passed into the same to be weighed, the state, by its duly authorized officers, agents and servants, constructed a sewer from the weigh-lock through the center of John street to the Mohawk river, so that the water discharged from the lock might be conveyed into the river. At the time of the construction of that sewer the city sewer was taken up, and since then there has not been any other than the state sewer in that street, which took the place of the former sewer, nor any other means by which the lots along that street could be drained. The parties engaged in the construction of the state sewer requested the claimant during the construction of the sewer to point out where he, the claimant, would have openings made therein, and thereupon the claimant did point out the places for such openings, which were left in the sewer accordingly, and from that time the claimant has drained his lot through such openings into that sewer. From the completion of the sewer the claimant had no trouble with or water from the sewer in or upon his premises until the year 1876, when water came from the sewer into the basement of a store upon his premises and caused him some damage. He then gave the superintendent of the canal at Utica notice of the occurrence and requested him to close the gate in the weigh-lock which opened into the same, which request was unheeded. About the 5th and 6th days of December, 1877, the water from the sewer again came into the same basement and damaged the goods therein of the occupant, Hieber & Co., the tenants of the claimant, more than $1,200. By the terms of the lease between the claimant and Hieber & Co., he had agreed

to pay them for any damage they might sustain from
any backwater from the sewer. The claimant settled with
Hieber & Co., and paid them for their damage the
sum of $1,200 receiving from them a release of all claims
against him, they, however, reserving the balance of their claim
for damages against the state, the total amount of which they
claimed was more than $1,200. Thereafter Hieber & Co.
duly assigned their claim for the damages so paid to them to
the claimant. In December 1877, the claimant caused the
sewer to be examined and found obstructions therein sufficient
to dam up and set back the water therein, and he caused the
obstruction to be removed and since then the basement of the
claimant's store has not been flooded with water. There was
no proof of any contract on the part of the state with the city
of Utica by which the state agreed or obligated itself to keep
open and in good condition the state sewer for the benefit of
the individual property holders along the line thereof.

*Seymour & Weaver* for appellant. The state is liable
in all cases where the same facts would create a legal
liability against an individual or a corporation. (Laws of
1870, chap. 321, p. 749; Laws of 1883, chap. 205, § 13,
p. 211; *Sipple* v. *State*, 99 N. Y. 284.) Irrespective of the
obligation of the state to furnish safe and proper sewage to
the claimant, it was bound to so use its own as not to injure
another's property; and having been notified of the defect, it
was guilty of negligence in not removing the obstruction and
keeping its aqueduct in repair. The damage was immediate
and direct, and the state is liable therefor. (*Sipple* v. *State*,
99 N. Y. 284; *Comstock* v. *N. Y. C. & H. R. R. R. Co.*, 48
Hun, 225; *Noonan* v. *Albany*, 79 N. Y. 470; *Jutte* v. *Hughes*,
67 id. 267, 272; *Harrison* v. *G. N. R. Co.*, 3 Hurls. & Colt.
231; *Haynes* v. *Burlington*, 38 Vt. 350; *Bellows* v. *Sackett*,
15 Barb. 96; 3 Black. Com. 208; *Reed* v. *State*, 108 id.
407.) By taking up the city sewer and substituting for it a
structure of its own, into which abutting owners were directed
to drain, the state virtually assumed the obligation of furnish-

Statement of case.

ing the city and abutting owners safe and sufficient drainage in place of that which it had taken from them. (*Barton* v. *Syracuse*, 36 N. Y. 54; *Nims* v. *City of Troy*, 59 id. 500, 508; *Mayor, etc.* v. *Furze*, 3 Hill, 612; 2 Dillon on Munic. Corp. 802; *Child* v. *Boston*, 4 Allen, 41.) The building of an additional drain by the claimant, entering the state sewer at a point lower down, was an honest effort to get below the obstruction and avoid another overflow. It did not change the claimant's rights or the obligations of the state, and is no defense to the present claim. (*Comstock* v. *N. Y. C. & H. R. R. R. Co.*, 48 Hun, 227.)

*Chas. F. Tabor*, attorney-general, for respondent. The state is not liable, in a proceeding against it, for negligence, unless it has assumed such a liability by positive statute. (*Lewis* v. *State*, 96 N. Y. 71.) For the destruction of the old sewer, and the taking possession of its site for its own structure, the state was perhaps liable to make compensation in damages to the city, if the claim had been filed within the time allowed by law. (*Marks* v. *State*, 97 N. Y. 572.) The adjacent owners had no property rights in the old sewer, for the destruction of which they would have a claim against the state. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Moyer* v. *N. Y. C. R. R. Co.*, 88 id. 351; *Victory* v. *Baker*, 67 id. 366; *Waffle* v. *N. Y. C. R. R. Co.*, 53 id. 11.) The privilege, therefore, which the claimant had of draining his cellar into this sewer, rested upon the license or permission only. It was not a privilege which had ripened or could ripen into a prescriptive right. Especially is this true as against the state. (*Burbank* v. *Fay*, 65 N. Y. 57; *Dermott* v. *People*, 99 id. 101.) Mere omissions, when not connected with a legal duty, are not the subject of action. (Wharton on Negligence, § 82.) A suit will not lie, on the part of an individual, for damages arising from the unskillful or defective construction of a public sewer, where such damages result directly to the party injured by his use of it for his private convenience. (*Nicholson* v. *E. R. Co.*, 41 N. Y. 525;

*Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 id. 244; *Converse* v. *Walker*, 30 Hun, 596; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Moyer* v. *N. Y. C. & H. R. R. R. Co.*, 88 id. 351; *Splittorf* v. *State*, 108 id. 205.) The state cannot, without its own consent, be held legally or equitably liable to an assignee for part, and to the original creditor, or other assignee, for another part of the claim. (*James* v. *City of Newton*, 142 Mass. 366; *Palmer* v. *Merrill*, 6 Cush. 282; *Mulford* v. *Hodges*, 10 Hun, 79; *Field* v. *Mayor, etc.*, 6 N. Y. 188.) The claimant's offer to show by the witness Kinsinger that one of the men who went into the sewer when he came out said "that he found the water above the obstruction to be over the top of his rubber boots; two or three feet deep," was properly excluded, being mere hearsay, and no part of the *res gestœ.* (*Waldell* v. *N. Y. C. & H R. R. R. Co.*, 95 N. Y. 274.)

EARL, J. It seems to us that the claim rejected by the Board of Claims is meritorious and has foundation in law. There is no conflict in the evidence, and all the questions that arise thereon are questions of law.

Before 1840 there was a lawful sewer in John street constructed for the benefit of owners of lots upon that street, and probably at their expense. Such owners had the right to drain their lots into that sewer, and were lawfully doing so when the state, in or about 1840, came there and took up that, sewer and substituted its sewer in the place thereof. There was no other sewer in that street but the state sewer, and it was practically impossible to have any other there; and there was no way to drain the lots upon that street, except into that sewer. If it had been necessary for the purposes of the state that it should have the exclusive right of a sewer in that street and its exclusive use, it would have been necessary for the state to condemn, by the exercise of the power of eminent domain, the interests and easements of the property owners in so much of the street as was needed for the sewer. It could not have taken the land and destroyed the right of

drainage without making compensation to the abutting owners. There is no claim that the state took any condemnation proceedings, and it is clear that it did not intend to acquire any exclusive use of a sewer in that street. It constructed the sewer not only for its use, but also for the use of the lot owners. The use of the sewer for draining the adjoining lots was perfectly consistent with the purposes of the state, and it is clear that all it intended to do was to substitute its sewer, a larger one, in the place of the city sewer. It cannot be assumed that it intended to do an unnecessary injury to the property owners. So, finding the drains from the adjoining lots into the city sewer, the agents of the state, in constructing the state sewer, left openings therein for such drains, and, probably, for other drains which had not before existed at such places as the property owners pointed out. These openings were left not merely to give a license to the property owners to drain their lots through them into the sewer, but in recognition of an existing right of drainage, and in the discharge of a duty the state owed to the lot owners. No other view is consistent with the facts. Having thus constructed the sewer with these openings, the state was bound to use reasonable care in keeping the sewer in repair and in its management.

From 1840 to 1876, the claimant suffered no damage from the sewer. In the latter year water came from the sewer into the basement of the claimant's store, and the state had notice of it. The water could be set back through the drain only by some obstruction to the flow of the water in the sewer. The state took no action to repair the sewer or to remove the obstruction. In 1877, the water was again set back through the drain and the obstruction was then discovered by the claimant and removed. Thus the state failed in its duty to the claimant. It cannot be said in answer to the claim of the claimant that he would have suffered no damage if his drain had not been thus connected with the sewer, because he had the right, upon the facts as they now appear, to have his drain there, and it was the duty of the state to keep the water which it dis-

charged into the sewer, from being dammed up therein, and forced back into the drain. It owed the same duty which a city owning a sewer, and charged with the duty of keeping it in repair, owes to abutting owners. (*Barton* v. *City of Syracuse*, 36 N. Y. 54; *Nims* v. *City of Troy*, 59 id. 500.)

Our conclusion, therefore, is that the award of the Board of Claims should be reversed, and a new hearing ordered, costs to abide event.

All concur.

Award reversed.