The People agt. Denison.

---

# SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK agt. HENRY D. DENISON, JAMES J. BELDEN, A. CALDWELL BELDEN and THOMAS GALE.

*Counter-claim — in action by the state — a defendant cannot recover judgment for his counter-claim against the state.*

By the report of the referees, to whom this cause was referred, a judgment was recovered and duly entered in favor of the plaintiffs for $399,203.43. An appeal was taken from this judgment by the defendants to the general term of this court who reversed said judgment and ordered a new trial, with costs to abide event. The plaintiffs appealed to the court of appeals, stipulating in such notice of appeal as follows: "And the plaintiffs hereby stipulate and consent, that if the said order hereby appealed from is affirmed, judgment absolute may and shall be rendered against the plaintiffs and appellants." The *remittitur* from the court of appeals declared that, after hearing counsel for the parties, and after due deliberation had thereon, they did order and adjudge that the order of the general term appealed from in this action to this court be and the same is hereby affirmed, and judgment rendered absolute for the defendants on stipulation, with costs.

An order of this court was made and entered which, after reciting the previous proceedings, says: "And the said plaintiffs having in their notice of appeal stipulated and consented that if the order appealed from should be affirmed that judgment absolute should be rendered against them, the said court of appeals having affirmed the order of the said general term, and directed judgment absolute in favor of the defendants on stipulation: ordered that the judgment of the court of appeals be and the same is hereby made the judgment of this court." Under these orders the clerk of Albany county entered a judgment against the plaintiffs and in favor of the defendants "for the sum of $95,382.45, the amount of their counter-claim, and $6,507.14, as and for their costs in this action, amounting in the aggregate to $101,899.59. On motion by plaintiffs to vacate the judgment for the amount of the counter-claim:

*Held, first,* that even prior to the act of 1876, which established a state board of audit, there was no authority either by a suit against the state, or in one instituted by it to enforce a claim against it.

*Second.* Since the act of 1876, creating "*a state board of audit,*" it matters not whether a suit is brought againt the state to recover a supposed debt, or whether it is set up in an action brought by the state by way of set-off or counter-claim, that supposed debt is within the broad words of the act, "*all private claims and accounts against the state,*" and must, therefore, be submitted to the special tribunal created by it.

*Third.* Unless this state has authorized a set-off of an independent claim against itself in an action which it has brought, and has further authorized an affirmative judgment, the judgment in this action cannot be upheld.

*Fourth.* The set-off and judgment are not authorized by 3 Revised Statutes (*6th ed.,* page 860, section 13).

*Fifth.* If this action had been between private individuals the judgment for the counter-claim could not be upheld, as there is no judgment or order of any court warranting or directing it.

Where an order granting a new trial to the defendants is affirmed in the court of appeals, such affirmance and the direction for "judgment absolute upon the right of the appellant," without any further or other direction does not authorize the clerk of the county, in which judgment is to be entered, to include therein a demand made against the plaintiff for an independent claim, when the right thereto has never been adjudicated in his favor, and when no judgment, which has been rendered, necessarily involves its merits.

*Albany, Special Term, May,* 1880.

MOTION on behalf of plaintiffs to vacate a judgment docketed and entered in Albany county against the plaintiffs on

The People agt. Denison.

the 28th day of April, 1880, in favor of the defendants for the sum of $95,380.45, the amount of the counter-claim set up in the answer in the above-entitled action.

*Hamilton Ward*, attorney-general, for plaintiffs and motion.

*Wm. C. Ruger*, for defendants and in opposition.

WESTBROOK, *J.* — By the report of the three referees (James Emott, Charles O. Tappan and Isaac Lawson), to whom this cause was referred, made on the 28th day of December, 1877, a judgment was recovered and duly entered in favor of the plaintiffs on the 17th day of January, 1880, for the sum of $387,109.64 damages and $12,093.78 costs, making a total of recovery for damages and costs of $399,203.42.

On the 24th day of January, 1878, an appeal was taken from this judgment by the defendants to the general term of this court, held in and for the third department, which court on the 26th day of November, 1879, reversed said judgment and ordered a new trial with costs to abide event.

On the 3d day of January, 1880, the plaintiffs appealed from the decision of the general term to the court of appeals, stipulating in such notice of appeal as follows: "And the plaintiffs hereby stipulate and consent, that if the said order hereby appealed from is affirmed, judgment absolute may and shall be rendered against the plaintiffs and appellants." The notice of appeal and stipulation is signed "Hamilton Ward, attorney-general, for the appellants."

The *remittitur* from the court of appeals is dated April 6, 1880, and it is therein declared, after a recital of the appeal to that court, that the court of appeals, after hearing counsel for the parties, " and after due deliberation had thereon, did order and adjudge that the order of the general term of the supreme court appealed from in this action to this court be and the same is hereby affirmed, and judgment rendered absolute for the defendants on stipulation, with costs."

An order of this court, made on the 6th day of April, 1880 (the date of the caption of the order, February 6, 1880, is evidently erroneous, as it is prior to that of the *remittitur*, and the date of the filing is April 6, 1880), after reciting the previous proceedings, says: "And the said plaintiffs having in their notice of appeal stipulated and consented, that if the order appealed from should be affirmed, that judgment absolute should be rendered against them; the said court of appeals having, on the 6th day of April, 1880, affirmed the order of the said general term, and directed judgment absolute in favor of the defendants on stipulation: Now, then, on reading and filing the *remittitur* from the said court of appeals, and on motion of Wm. C. Ruger, of counsel for the respondents, it is ordered that the judgment of the court of appeals be and the same is hereby made the judgment of this court."

Under the orders which have been given, the clerk of Albany county entered a judgment on the 28th day of April, 1880, against the plaintiffs and in favor of the defendants "for the sum of $95,382.45, the amount of their counterclaim, and $6,507.14 as and for their costs in this action, amounting in the aggregate to $101,899.59."

The judgment for the counter-claim the attorney-general now moves to vacate as being unauthorized by any order of the court, and as otherwise illegal and improper. So much of the notice of motion as objected to certain items of costs allowed by the clerk was abandoned, and the only question now in issue is the legality of the judgment for the counterclaim. For the purpose of presenting one point, which the motion involves more sharply, the exact words of the stipulation given in behalf of the plaintiffs on their appeal to the court of appeals, with that of the *remittitur*, and also that of the order of the special term of this court, making the judgment of the former that of the latter, have been detailed. From that statement it distinctly appears, that neither the court of appeals nor the supreme court has expressly ordered judgment for the counter-claim, and the authority of the

clerk of Albany county to enter it must depend upon statutory enactments. To the consideration of the legality of that judgment, the discussion will be at once directed, without any embarrassment founded upon any order or decision directly allowing it.

The first and perhaps the principal objection to the validity of the judgment is that it is against a sovereign state, which has never authorized the bringing of suits against itself in its own courts for the recovery of any debt or obligation supposed to be owing by it, but which, on the contrary, only four years ago (*chapter* 444 *of the Laws of* 1876), created "A State Board of Audit," to whom both the "duty" and "power" were confided "to hear all private claims and accounts against the state (except such as are now heard by the canal appraisers according to law), to administer oaths and take testimony in relation thereto, to determine on the justice and amounts thereof, and to allow such sums as it shall consider should equitably be paid by the state to the claimants." A consideration of the language of the act to which reference has just been made, impresses us with its sweeping effect. There is no exception, no limitation whatever. It is expressly made, as already said, the "duty" of the tribunal by that act created, and the "power" to do so is also conferred, to hear "all private claims and accounts against the state" (except as therein excepted, and the claim of defendants is clearly not within the exception), and after hearing evidence in any case, "to determine on the justice and amount thereof." The legislative intent could not, it seems to me, be made more manifest, for that statute is a clear and distinct enactment in the form of a law, that the state is unwilling to submit its sovereignty to the jurisdiction of courts for the enforcement of claims against it, and that if any language has been used in any previous law which is capable of that construction, it must now at least be deemed to be modified in conformity with this recent declaration of its will. It matters not whether a suit is brought against the state to recover a sup-

posed debt, or whether it is set up in an action brought by
the state by way of set-off or counter-claim, that supposed
debt is certainly within the broad words of the act, "all pri-
vate claims and accounts against the state," and must there-
fore be submitted to the special tribunal created by it.

Apart, however, from the objection founded upon this stat-
ute which makes the presentation of "all private claims and
accounts against the state" to the board of audit a necessity,
there is still another and that is, that there can be found no
warrant for the recovery of any such demands in this court
either by action against the state, or by interposing the same
as a set-off in one brought by the state. In either, as the aid
of the courts is invoked to enforce, as there was in this case,
an affirmative claim against the sovereign power — the state —
there must be jurisdiction expressly and plainly conferred
to enable legal tribunals to pass upon such claim and to ren-
der judgment thereon. This doctrine, so clearly and logically
deducible from the fundamental thought that the Created
Being can exercise no authority over its Creator, except what
the latter voluntarily confers, has been repeatedly declared in
carefully-considered cases both in this country and in England,
to some of which in this country reference will now be made.

In *Commonwealth* agt. *Matlack* (4 *Dallas*, 303), an action
brought by the state to recover from the defendant, who had
been clerk to the senate during several sessions, certain mon-
eys, which he had received to disburse for its contingent
expenses, it was held that no set-off could be allowed. On
the trial of that action, "the defendant proved that he had
expended considerable more money than he had received for
the use of the house; and he claimed a verdict for the amount
of his advances as well as for the additional compensation
allowed by the act of 1794. But, after argument, the court
declared that the defendant could not indirectly recover from
the state, a substantive, independent claim by way of set-off,
any more than he could directly recover a debt due from the
state, by bringing a suit against her. That the present action

was brought to compel an account for money received for the use of the senate, in which the defendant, if he proved that the money received was so applied, would be entitled to a verdict; but that even then, he could not be entitled to a verdict for the amount of his advances, which the senate alone was competent to allow."

In *White et al.* agt. *The Governor* (18 *Alabama*, 767), it was held that a set-off was not allowable in an action brought by the state, and that the general statutes in regard to set-off were not applicable. The court (*page* 769) say: "By the established rules of interpreting statutes, as recognized by the common law, the government would not be embraced by those statutes, prescribing remedies for the citizens, in matters affecting the interest of the state, unless named in the statute to be bound, and it has been expressly held in England that the statute of set-off does not apply to the government, although that statute is couched in as general language as our own (*See Broom's Legal Maxims*)."

In *State* agt. *Baltimore and Ohio Railroad Company* (34 *Maryland*, 344), an action for money had and received, the defendant in its second plea pleaded a set-off and a claim against the state. To this plea there was a demurrer, and the court (*page* 374) said: "Upon the questions raised by the demurrer to the second plea, we concur in the ruling of the superior court. In actions instituted by the state, it is well settled that no right of set-off exists, unless in cases where such defense is expressly allowed by statute, for the reason that the state being sovereign, is not liable to be sued by an individual or corporation."

It can scarcely be necessary to multiply authorities in support of a principle, which, apart from any decisions, would seem to be elementary. *Commonwealth* agt. *Rodes* (5 *T. B. Monroe, Kentucky Reports, page* 318); *Chevallier's Administrators* agt. *The State* (10 *Texas*, 353), and *Raymond* agt. *The State* (54 *Miss.*, 562, *also reported in the* 28th *American Reports*, 382), are equally in point; and even though a set-off

against the sovereignty is allowed by statute to be pleaded, the supreme court of the United States has expressly decided (*United States* agt. *Eckford*, 6 *Wallace*, 484), that "no judgment for any ascertained excess can be rendered against the government, although it may be judicially ascertained that, on striking a balance of just demands the government is indebted to the defendant in such amount."

It will be assumed then as well-settled law, that unless the state has authorized a set-off of an independent claim against itself in an action which it has brought, and has further authorized an affirmative judgment therefor, that the judgment in this action cannot be upheld. So clear and well understood is this rule of law, that it was not disputed by the learned counsel of the defendants, who insisted that the set-off and judgment were authorized by 3d Revised Statutes (6*th ed., page* 860, *sec.* 13). This position will now be considered.

The statute relied upon is as follows; "Every suit or proceeding in a civil case instituted in the name of the people of this state, by any public officer duly authorized for that purpose, shall be subject to all the provisions of law respecting similar suits or proceedings, when instituted by or in the name of any citizen, except when provision is or shall be otherwise expressly made by statute; and in all such suits and proceedings the people of this state shall be liable to be nonsuited, and to have judgments of *non pros.* or of discontinuance entered against them, in the same cases, in 'like manner and with the same effect as in suits brought by citizens, except that no execution shall issue therein."

It will be observed that this provision of the Revised Statutes defines the course of procedure in suits or proceedings by the state, and also declares the liability which the state incurs by their initiation. The statute does not say that the people incur the same liability that a citizen does when it becomes a party plaintiff, but the "suit or proceeding * * * shall be subject to all the provisions of law respecting similar suits or proceedings, when instituted by or in the name of any

citizen;" and then having imposed upon the "suit or proceeding" "the provisions of law respecting similar suits or proceedings" which are instituted by the citizen, it plainly states and defines the judgments which can be rendered against the state, among which is not the right to enter one for an independent and affirmative alleged cause of action against it, but for costs only. Without this or a similar provision of law no judgment whatever could be rendered against the state, and the authority conferred cannot be extended. If the argument of defendant's counsel is sound, that the first provision of the section which has been quoted was designed to subject the state to any liability which any suitor in its courts as plaintiff incurs, it was easy so to say in plain words, and to end the section and sentence with that enunciation. Instead, however, of doing so, in the same sentence, upon the language of which, in its commencement, the counsel bases his argument, are added the words which limit the power to enter judgment in the action or proceeding which the people initiate. To the extent of the authority granted, the courts can exercise jurisdiction, but beyond that they cannot go, for they are then interfering with sovereign rights, over which they have no control.

In *People* agt. *Brandreth* (36 *N. Y.*, 191 ; *also reported in* 3 *Abbott's Pr. Rep.* [*N. S.*], 224), at circuit and general term of this court, it was held "that in an action by the state to recover money, no counter-claim or set-off could be allowed." The court of appeals, however, refused to pass upon that question and affirmed the prior decisions upon other grounds. The opinion of judge HUNT, though entitled to great respect, is a dissenting one, and even he does not undertake to decide that a recovery can be had against the state for any sum which it may be indebted in excess of its own demand.

The result of our examination is clear, that even prior to the act of 1876, which established a state board of audit, there was no authority either by a suit against the state, or in

one instituted by it to enforce a claim against it. The argument, however, founded upon the statute of 1876, should not be forgotten. Even though the provision of the Revised Statutes, upon which comment has been made, could be so strained as to allow a demand against the state to be enforced as a counter-claim, yet it was capable of alteration and repeal, and the similarity of proceedings in suits and proceedings brought by the people of the state, to that in those brought by any citizen, was with the expressed exception, " when provision is or shall be otherwise expressly made by statute." That provision now exists, and as has been shown in the beginning of this opinion, chapter 444 of the Laws of 1876, which creates a " State Board of Audit " for the purpose of hearing and determining "all private claims and accounts against the state," must necessarily remit to that tribunal the counter-claim of the defendants in this action.

We are now brought to the consideration of another question, and that is, if this action had been between private individuals, could the judgment for the counter-claim be upheld ? This discussion will be premised by a statement of the case, and its situation when it went to and passed from the court of appeals.

The state, on the 9th day of September, 1879, entered into a contract with Henry D. Denison to do certain work upon the Erie canal, and to furnish the materials therefor, in which the other defendants were the partners of Denison. The complaint averred that under that contract the defendant should have received only $74,183.40 ; that no legal or valid change or alteration of that contract was ever made. That at various times between the 23d day of November, 1869, and 1st day of June, 1875, by false pretenses and false certificates from resident and assistant engineers, the defendants obtained several hundred thousand dollars from the state in excess of what they were legally entitled to receive under their con. tract. The complaint also contained a distinct averment that the " false certificates and vouchers presented by the defend-

ants, which were procured by them from the assistant engineers and resident engineers, officers of the state, * * * were procured and obtained by the exercise of corrupt influences upon the said officers, and, among other influences, by inducing the said officers to believe that, through the great political power and influence of the defendants and their friends, the said engineers would be dismissed if they refused to sign such certificates and vouchers," and it concluded with a demand for judgment against the defendants, " for the sum of $419,571, with interest thereon from the 1st day of January, 1870, besides costs of the action "

The answers deny all fraud, corruption and collusion of every kind. They admit the making of the original contract set out in the complaint, but aver the legal performance of work and furnishing of materials for and to the state to the amount of $494,584.05, in actual value, which have been duly accepted by it. The payments on account thereof are detailed, and all are averred to be under legislative appropriations made for that purpose. Such payments, however, the answers claim, do not liquidate the demands of defendants in full, but, on the contrary, $73,674.05 is charged to be justly due and owing by the state to the defendants on account of the work done and materials furnished by them, for which sum, " with interest thereon from the first day of June, 1875, with costs of this action," judgment is demanded.

To the answer of the defendants there was a reply by the plaintiffs, which distinctly put in issue the right of the defendants to recover the moneys set up by way of counter-claim, and, also, the facts upon which such right of set-off was averred to exist.

The report of the referees, to whom the action was referred to hear and decide, did not find any fraud, nor that the state had paid one dollar for work or materials in excess of their actual value, but that the alterations in the original contract, requiring more work and materials were contrary to law, and that the payments made on account of such increased work

and materials, amounting to $332,926, could be recovered by the state, and that the plaintiffs were entitled to a judgment for that sum against the defendants, with interest from the 30th day of August, 1875, besides the costs of the action. The report further found the sum of $387,109.64 to be due to the plaintiffs on the day of the date thereof, which was December 28, 1877.

The judgment entered upon this report was, as has already been stated, reversed by this court at general term, and a new trial was ordered, upon two grounds : First, that the complaint being for fraud, the plaintiffs could not maintain their action without establishing it; and, second, that the voluntary payment of the money by the state precluded its recovery, without allowing at least the value of the work done and materials furnished, of which the state had the benefit.   It then became a grave question for the attorney-general to decide, whether he would take a new trial and endeavor to establish upon it what the state, according to the report of the referees, had failed to prove upon the first, or whether he would seek to maintain the judgment on the ground upon which three referees — learned and able lawyers — had placed it.   Either course was perilous.   If he had taken a new trial and failed to prove fraud as his predecessors had failed, he would have been subject to the imputation of having needlessly subjected the state to the expense of a second trial, the necessary failure on which had been foreshadowed by the result of the first trial. If he went directly to the court of appeals and gave the stipulation required by the Code (*section* 191), and was there also unsuccessful, he was liable to be censured for throwing away the chance of success by establishing fraud on the second trial. By appealing, as he did, directly to the court of appeals, he sought, in the least expensive manner, to maintain the judgment upon the only ground on which three able and disinterested professional men thought a recovery could be had, and thus avoided the large expenditure of retrying an issue, in which they had discovered no merit.

The People agt. Denison.

In the court of appeals all the judges except EARL, J., concurred in the opinion of judge FOLGER, " That the cause of action stated in the complaint was one in fraud alone, and that the referees did not find that there was fraud in the transaction." Two of the judges (MILLER and EARL) further concurred with judge FOLGER in his opinion, that some of the payments to the defendants by the canal commissioners and auditor were without authority of law, but that the referees erred in holding that the state could recover all the money thus paid without any allowance for the value of the work done, but that there was not a ratification by the legislature of the unauthorized payments. A majority of the court (CHURCH, Ch. J., RAPALLO, ANDREWS and DANFORTH, JJ.), however, held that there was a ratification by the legislature by their acts of the action of the canal commissioners and the auditor of the canal department in making payment to the defendants. Perhaps, in view of the conclusion reached by the court, it ought further to be said that in no event could a recovery have been had by the state for the moneys voluntarily paid. If the legislature has ratified payments made by officers of the state, no rule of law known to us would sustain an action to compel their payment back (*People* agt. *Stevens and ors.*, 71 *N. Y.*, 527).

From the foregoing statement it appears that the grounds upon which a reversal was placed by a majority of the court were: 1st. That the complaint was in fraud, and the referees had failed to find that any was established; and 2d. That legislative enactments had' ratified and confirmed the payments made to the defendants. It is clear, then, that the right of the defendants to a judgment against the state for their counter-claim rests upon no decision of any court, but only upon the stipulation given with the notice of appeal, and upon the order of the court of appeals affirming that of the general term, and directing "judgment absolute for the defendants on stipulation." It is true that the referees have found, and so the pleadings, perhaps, admit, that on each payment made

to the defendants on account of their work and material, fifteen per cent was retained from the amount certified to be due at the time of the payment, and that the aggregate of the sums so retained with the interest added is the amount of the judgment recorded. But, while this is true, it has not been decided by any tribunal whatsoever that this money can be recovered. The power of the state officers to order the work and materials in excess of the original contract was denied by the referees, neither was it affirmed by any court, and the nearest approximation to the settling of any principle from which the right of its recovery can be deduced is to be found in the conclusion of a majority of the judges of the court of appeals, that the acts of the legislature had ratified the payments made on account thereof. Perhaps it would be safe to hold that legislative enactments ratifying payments made on account of work and materials validate the entire orders given therefor, but a plausible line of argument can be stated to prove that when a public officer exceeds his authority in making a contract, and the legislature have made appropriations out of which payments have been made on account thereof, that whilst the money actually paid cannot be recovered from the parties to whom it was given, yet the state has incurred no liability for the remainder. Without deciding this question, however, it may with truth be repeated that the liability of the state for the unpaid sums has not been adjudicated, and that the judgment, were the action one between individuals, must depend upon the effect of the stipulation, and the order rendering judgment absolute in conformity therewith.

Section 191 of the Code provides that, " an appeal cannot be taken from an order granting a new trial on a case or exceptions, unless the notice of appeal contains an assent on the part of the appellant, that if the order is affirmed judgment absolute shall be rendered against the appellant." If that section is to be construed as the defendants argue it should be, then in any case where a set-off or counter-claim is set up in

The People agt. Denison.

the answer, though not proved or thought of upon the trial (and how often that occurs in practice is well known to the profession), and upon such trial the plaintiff has a recovery, which the general term reverses on appeal, under a stipulation of the character given in this case on appeal to the court of appeals, an affirmance of the order of reversal would necessitate a judgment for a counter-claim which never existed, was unproved on the trial, and only claimed *pro forma* in the answer. Can a construction which produces such a result be sound? Must a party who seeks to review a decision which overturns his right to recover, take the hazard in doing so of paying a claim against himself, the only existence of which is to be found in the pleading? It seems to me that no such result was intended by our law-makers, and that a succeeding section, as will now be endeavored to be shown, removes the difficulty.

The one hundred and ninety-fourth section of the Code provides: "The judgment or order of the court of appeals must be remitted to the court below, to be entered according to law. Upon an appeal from an order granting a new trial on a case, or exceptions, if the court of appeals determines that no error was committed in granting the new trial, it must render judgment absolute upon the right of the appellant; and after its judgment has been remitted to the court below, an assessment of damages or any other proceeding, requisite to render the judgment effectual, may be had in the latter." What does the section mean? The court " must render judgment absolute *upon the right of the appellant.*" Is there no significance in those words — " the right of the appellant ? " The court is not to render an absolute judgment for every claim made by the defendant in his pleading, but upon " the right of the appellant," which the appeal involves and which the order appealed from denied him. The affirmance of the order need not deprive the defendant of any set-off or counter-claim, for that may be protected by the order of the appellate tribunal, which can make it in such form, when that is

necessary, that the court below may direct "an assessment of damages, or any other proceeding, requisite to render the judgment effectual."

It may be argued that the view which is taken in this opinion differs from that expressed by judge EARL, in *Hiscock et al.* agt. *Harris et al.*, an unreported case recently decided by the court of appeals, a manuscript copy of which has been furnished me. The plaintiff in that case sought to recover upon an item in an award made in his favor. The defendants in their answer alleged that the award was procured by the fraud of the plaintiff, and asked that the "award be adjudged to be void, and that the same be vacated and set aside, and that the submission be declared to be revoked, and that the complaint be dismissed, and that they have judgment accordingly." To this answer there was a reply denying the facts upon which it was based. The referee to whom the case was referred, reported in favor of the plaintiff, and the general term granted a new trial. On appeal to the court of appeals the order of the general term was affirmed and judgment absolute ordered in favor of the defendants. No one can doubt that the effect of that order was precisely what judge EARL, in his manuscript opinion, held it to be, a judgment declaring the award void. It was the whole issue made by the pleadings, and "judgment absolute upon the right of the appellant" could mean only, what it was held to mean by the appellate tribunal, that the award must, by the judgment, be declared void. It is true that the language of the opinion of judge EARL, taken literally, may be construed to go much further, but construed by the facts of the case in which it was used, it cannot be decisive of a case like the present, in which the facts are essentially different, especially when the manuscript report of the case does not show that a majority of the court concurred in all the views which the opinion expresses.

Neither then, in *Hiscock et al.* agt. *Harris et al.*, nor in any adjudged case which I have been able to discover, has it

been held that where an order granting a new trial to the defendant is affirmed in the court of appeals, that such affirmance and the direction for "judgment absolute upon the right of the appellant," without any further or other direction, authorizes the clerk of the county, in which judgment is to be entered, to include therein a demand made against the plaintiff for an independent claim, when the right thereto has never been adjudicated in his favor, and when no judgment, which has been rendered, necessarily involves its merits. So to hold would, it seems to me, often work gross injustice, and such holding is not required by any language of the Code, which can readily and easily be so interpreted as not to do any injustice, and also protect any valid demands which the defendant may have by way of set-off or counter-claim.

This opinion has already reached a length which was not intended, and the conclusions can be briefly stated.

There must be an order vacating the judgment against the state for the reasons: 1st. That the defendants cannot obtain a judgment for any debt or claim against it in this court. 2d. There is no judgment or order of any court warranting or directing it.

Various other points were made and discussed by the attorney-general upon this motion, which have not been considered, because the result of our deliberation, just stated, has made the examination thereof unnecessary.