EDWARD H. LITCHFIELD, Appellant, *v.* EDWARD A. BOND and
Others, Respondents.

*State survey — entry upon private property and cutting of timber thereon for the pur-
pose of making the survey — it is an exercise of the right of eminent domain, not of
the police power — a statute authorizes all that is necessary to its execution — the
State is liable for the acts of its officers done in good faith in the exercise of statu-
tory powers — when the State officers may not be enjoined or held liable in damages
because thereof — the landowner may enforce his claim in the Court of Claims —
the ascertainment of the damages by a commission or a jury is not necessary in the
case of the State — the title to the land need not be taken nor the occupation be
continuous.*

When a statute commands an act to be done it authorizes all that is necessarily
done in its performance.

In the absence of fraud or collusion the acts of State officers within the limit of
the powers conferred upon them are the acts of the State. The State is liable
for the torts of its officers committed within the limits of their authority.

The government can no more repudiate the acts of an authorized agent than can
an individual.

It is only where the officer is guilty of malfeasance or non-feasance, and thus
transcends his authority, that the State is relieved from responsibility for his
acts and the officer becomes personally liable.

Public officials lawfully employed in making public improvements are not liable
for direct or consequential damages occasioned by them to others in the course
of making such improvement, unless caused by misconduct, negligence or
unskillfulness.

Chapter 473 of the Laws of 1902, directing the State Engineer and Surveyor to
locate the south boundary line of the county of Franklin, by implication,
although not in express terms, authorizes an entry upon private property for
the purpose of carrying out the purpose of that act.

Where the officials engaged in the work adopt the method usually employed in
making extensive public surveys, the fact that the work involved an entry
upon private property and the cutting of timber thereon does not entitle the
landowner to maintain an action against the officials, either to restrain the
prosecution of the work or to recover the damages incident to such prosecution.

*Semble,* however, that the State is liable to the landowner for the damages which
he has sustained, and that the Court of Claims has jurisdiction to hear and
determine the landowner's claim.

In such a case it will be deemed that the infringement upon the property rights
of the landowner was done under the power of eminent domain vested in the
State, rather than under the police power.

Section 7 of article 1 of the Constitution of the State of New York, requiring that
in condemnation proceedings the compensation to be made to the owner shall
be ascertained by a jury or by commissioners appointed by the court, does not

apply where the State takes the property, nor is it necessary that compensation be specifically provided before the property is appropriated by the State. In condemnation proceedings it is not necessary that title to the land should be taken, nor that the occupation be continuous.

APPEAL by the plaintiff, Edward H. Litchfield, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Franklin on the 13th day of October, 1904, upon the report of a referee dismissing the complaint upon the merits.

*Hamilton Wallis*, for the appellant.

*Julius M. Mayer, Attorney-General,* and *George F. Slocum,* for the respondents.

HOUGHTON, J. :

The plaintiff is the owner of a forest park or game preserve consisting of about 9,000 acres, substantially inclosed by a wire fence, and situated on the southerly borders of Franklin county.

The south line of Franklin county had been long in dispute, the contending lines being nearly a mile apart and embracing several square miles of territory, concerning which the jurisdiction of the courts and the right of suffrage and taxation were in doubt.

By chapter 473 of the Laws of 1902 the Legislature authorized and directed the State Engineer and Surveyor to locate, establish and permanently mark upon the ground the south boundary line of the county of Franklin, and to make and preserve a map and field notes connected therewith, appropriating the sum of $40,000 for the expenses thereof. The act did not, in terms, authorize an entry upon private property for the purposes of making such survey or establishing monuments, or provide for any compensation to owners in case of such entry.

The total line thus directed to be surveyed and monumented was some seventy-five miles in length, all through forest and mountainous lands. The defendant Bond was the State Engineer and Surveyor and the other defendants were his assistants. Consultation was had as to the best method to be adopted in making this extensive and important survey, and it was determined that the system known as the straight base line method was the proper one. Two mountains

were selected, fifteen or twenty miles apart, between which this straight base line was run, bringing such line, temporary in character, only a few hundred feet northerly of the true south line of Franklin county as determined. In establishing this straight base line it was necessary to cut a vista through the forest so that a fore sight and back sight might be taken. In running this line the defendants entered upon plaintiff's lands and inclosure, without his consent, and made a cutting from six to twenty-five or thirty feet in width in places, thereby felling and leaving upon the ground several hundred trees of various kinds and dimensions — thus clearing of timber about two acres in extent.

There is another system of surveying lines of this character, known as the traverse method, which would not have necessitated any cutting upon plaintiff's premises. But the referee has found that the base line method is the one usually and properly employed in making extensive public surveys, and that the State Engineer properly adopted that method and located the line in a proper place, and we see no reason to disturb his conclusion in that respect.

While the cutting was in progress and the trees lying where they fell, the plaintiff brought this action to restrain the defendants from proceeding and for the damages already incurred, and obtained a temporary injunction against them. The referee decided that the plaintiff was not entitled to a permanent injunction restraining the defendants from completing the survey in the manner determined upon, and the occupation of the base line being temporary only, the plaintiff was not entitled to an injunction because of past acts, or because the timber cut was left lying upon the ground and might thereby become a menace in the form of forest fires.

We think the conclusion of the referee must be sustained.

The defendant Bond was a public officer, performing a duty imposed upon him by the Legislature. He was within his authority in making the survey in an approved and proper manner.

While the act did not expressly authorize entry upon private property, the survey could not be made without it, and the Legislature must have intended that it be done. When a statute commands an act to be done, it authorizes all that is necessary for its performance. (*Brownell* v. *Town of Greenwich*, 114 N. Y. 529; *Armstrong* v. *Village of Fort Edward*, 159 id. 318.)

Where a public officer is clothed by statute with power to do an act which concerns the public interests, the execution of the power may be insisted upon as a duty, though the statute creating it be only permissive in its terms. (*Mayor, etc., of City of New York v. Furze,* 3 Hill, 612.)

In the absence of fraud or collusion, the acts of public officers within the limits of power conferred upon them, and in the performance of the duties assigned, are the acts of the State. (*People* v. *Stephens,* 71 N. Y. 527.)

The government can no more repudiate the acts of an authorized agent than can an individual. (*Danolds* v. *State of New York,* 89 N. Y. 36.)

A known public agent, acting in his official capacity, cannot be held personally liable for his contracts made in the government's behalf. (Story Agency [4th ed.], §§ 302, 305; *Walker* v. *Swartwout,* 12 Johns. 444.)

The State is as much liable for the tort of its agent, when he keeps within the limits of his authority, as an individual or any other corporation. (Cooley Torts, *122, *123.)

It is only when a public agent is guilty of malfeasance or nonfeasance, and thus transcends his authority, that the State is relieved and the agent becomes personally liable. (Story Agency [4th ed.], § 320; *Adsit* v. *Brady,* 4 Hill, 630; *Robinson* v. *Chamberlain,* 34 N. Y. 389; *Bryant* v. *Town of Randolph,* 133 id. 70; *Gidley* v. *Lord Palmerston,* 3 Brod. & Bing. 275; *Sutton* v. *Clarke,* 6 Taunt. 29.)

Public officers lawfully employed in making public improvements are not liable for consequential damages occasioned by them to others, unless caused by misconduct, negligence or unskillfulness. (*Atwater* v. *Trustees, etc.,* 124 N. Y. 608.)

Like reasoning and like policy call for the same exemption from direct damages when inflicted within authority and without negligence, misconduct or unskillfulness.

An act of the Legislature authorizing commissioners to enter upon the lands of individuals to ascertain certain boundaries for public purposes, without making compensation to the owners, is not unconstitutional, and the public officers may make an entry upon private lands for the purpose of making the survey without being guilty of

a trespass, provided the entry is reasonably necessary, not too long continued, and accompanied with no unnecessary damage. ( *Winslow* v. *Gifford*, 6 Cush. 327.)

The act under consideration, by implication commanding entry upon private property, stands as though it contained express direction so to do.

The underlying principle prohibiting actions against public officers personally for acts done by them in the line of their duty is that it is against public policy, because it exposes them to a multiplicity of actions and thus hampers them in the discharge of their duties, and even prevents proper and prudent persons from accepting a public trust. (*Gidley* v. *Lord Palmerston, supra.*)

Our conclusion is that the defendants having done what they did by virtue of authority of the Legislature, and having done it, as the referee finds, in a proper manner and without unnecessary injury, an action will not lie against them either to restrain the prosecution of the work or for damages incident thereto.

But it does not follow that if the plaintiff has been injured he is without remedy.

The State, as such, is subject to the fundamental law of the land. The difficulty is with the remedy, not with the right. (Cooley Torts, *123.)

The fact that the State is not subject to an action on behalf of a citizen does not establish that he has no claim against the State or that no liability exists in his favor. (*Coster* v. *Mayor*, 43 N. Y. 399.)

We think the Court of Claims was open to the plaintiff. That court has jurisdiction to hear and determine any private claim against the State, filed within the proper time. (Code Civ. Proc. § 264.) It has, at least, as great jurisdiction as the former State Board of Audit and the Board of Claims had. (Laws of 1883, chap. 205, as amd.; Laws of 1897, chap. 36, adding to Code Civ. Proc. § 263 *et seq.*) Such courts have been held to be proper tribunals for the presentation of private claims against the State, such as money due upon contracts (*People* v. *Denison*, 8 Abb. N. C. 128; affd., 84 N. Y. 272); damages arising from failure to properly maintain a sewer in a street (*Ballou* v. *State of New York*, 111 N. Y. 496); damages resulting from a defective bridge on an abandoned

portion of the canal system ( *Woodman* v. *State*, 127 id. 397), as well as damages resulting from negligence in the use and management of the canals themselves. (*Sipple* v. *State*, 99 id. 284.)

The State not being subject to action in its own courts, has established a tribunal in which claims against it may be heard. The object in view was the protection of the citizen in giving to him a forum in which demands against and wrongs committed by the State might be adjudicated. (*Sipple* v. *State*, *supra*.)

The State being engaged in the business of maintaining and managing the canals, has seen fit to make itself liable for injuries resulting from negligence therein; and being, also, through its proper officers, engaged in the business of making contracts by which it is bound in the same manner as other corporations, we see no reason why it should not be liable for the injuries necessarily resulting from a survey directed by its Legislature to be made by one of its proper officers, or why the court established by it should not be open to one injured thereby.

In the case of *Waterloo Woolen Manufacturing Co.* v. *Shanahan* (128 N. Y. 345) the action was brought to restrain the Superintendent of Public Works from diverting for canal purposes certain waters to the injury of plaintiff's water power. In the course of the opinion the court says: "But if the plaintiff could establish any right to the use of the increased supply of water furnished by the State in the process of enlarging the canal from time to time, the most that the plaintiff could then claim would be that the improvement would result in a consequential injury which might form the basis for a claim for damages or compensation before the tribunal which the State has authorized to hear and determine such claims. It would furnish no ground for arresting the work of improving or enlarging the canal in such manner as the Legislature might determine to be for the public good."

The principle enunciated applies, it seems to us, with full force to the survey being prosecuted by the defendants.

The referee, by a conclusion of law, states that the acts of the defendants were justified by virtue of the police power of the State, and that the property of the plaintiff was not taken by the right of eminent domain.

We do not concur in the conclusion that the acts were justified

by the police power. There was no such emergency and overruling necessity as to invoke that high prerogative. It can much more reasonably be said that whatever was taken or done by the defendants was under the right of eminent domain. The State has all the power of eminent domain there is, and all that any sovereign has, subject to the limitation of the Constitution (Art. 1, § 6), of making just compensation.

The constitutional provision (Art. 1, § 7) requiring the compensation to be made to the owner to be ascertained by a jury or by commissioners appointed by the court, does not apply where the State takes the property. The State may take possession, go on with its work and await the claim of the owner for compensation. (*People* v. *Adirondack R. Co.*, 160 N. Y. 236; *Waterloo Woolen Manufacturing Co.* v. *Shanahan, supra.*) The taking title to lands is not a necessity in condemnation, nor need the occupation be continuous. (Cooley Const. Lim. [6th ed.] 656, 671; *Glover* v. *Powell*, 10 N. J. Eq. 212.) Where property is taken directly by the State it is not necessary that compensation be specifically provided before appropriation. The faith of the State is ample security and it is sufficient if provision is made by law by which the party can obtain compensation, and that an impartial tribunal is provided for assessing it. (Cooley Const. Lim. [6th ed.] 692.)

If lands or easements are taken for canals or for the State Adirondack Park the provision of the Constitution (Art. 1, § 6) is met by permitting the owner to go to the Court of Claims and prove his damages.

By section 269 of the Code of Civil Procedure it is provided that "if the claim arises in a case where the State seeks to appropriate or has appropriated land for a public use, the judgment shall contain a description of such land;" and further provision is therein made for the payment of judgments on the warrant of the Comptroller, and "where damages are awarded for the permanent appropriation of land for a public use, there shall also be filed with the Comptroller a satisfactory abstract of title."

These provisions would seem to contemplate payment for general condemnation by the State as well as for specific instances and purposes.

It is true that much, of necessity, must be read into the statute

directing the survey in order to make it a statute authorizing con-demnation; but in one form or another, if the State, through its officer, has caused injury to the plaintiff in the prosecution of a public work commanded by its Legislature, we think the Court of Claims must be open to him to prove and recover his damage.

The question involved on this appeal is not one of attempted jus-tification for continuing a nuisance, and does not come within the principle of *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 N. Y. 10), and kindred cases.

The damage had been done, the occupation had been had at the time of bringing the action, and if the leaving of the cut timber and brush upon the ground was a menace in the form of forest fires to plaintiff's surrounding property and thus became a nuisance, plain-tiff's injunction restrained the defendants from actual or attempted removal or abatement. Even if the leaving of the brush and timber be deemed a nuisance it is not one which the defendants con-tinued to maintain by any overt act, the continuance of which could be restrained by injunction.

Our conclusion is that the judgment must be affirmed upon the law and the facts, with costs.

Judgment unanimously affirmed, with costs.