Pauchogue Land Corporation, Respondent, *v.* Long Island State Park Commission and Others, Appellants.

*Parks — action to exclude defendants from certain land appropriated by it for park purposes — order denying defendant's motion for judgment on the pleadings, affirmed.*

Appeal from an order of the Supreme Court, made at the Kings Special Term and entered in the Suffolk county clerk's office on December 11, 1925, denying a motion for judgment on the pleadings.

Order denying motion for judgment on the pleadings affirmed, with ten dollars costs and disbursements. Under the act which creates the Long Island State Park Commission and specifies its powers (Laws of 1924, chap. 112) it may acquire land by " agreement, condemnation or entry " (§ 16) † but it may resort to neither of the last mentioned methods of acquiring title unless it " shall be unable to agree with the owners of or other persons having an interest in said real estate, or if by reason of legal incapacity, or absence of such owners or persons interested as aforesaid, or if for any other reason, no agreement can be made for the purchase of said real estate " (§ 18). The complaint alleges that no effort to agree with plaintiff for the acquisition of its land has been made. The complaint, therefore, states a cause of action. Rich, Jaycox and Lazansky, JJ., concur; Kapper, J., dissents in opinion, and votes to dismiss the complaint, with which Kelly, P. J., concurs.

Kapper, J. (dissenting): Chapter 112 of the Laws of 1924 created the Long Island State Park Commission, to consist of three members to be appointed by the Governor. Pursuant to the act, the individual defendants were appointed

---

* Added by Laws of 1920, chap. 920, which permits the Appellate Division, or the presiding justice thereof, in any department to grant an order to bring up a prisoner sentenced to death to testify as a witness. Formerly Code Civ. Proc. § 2011, as amd. by Laws of 1915, chap. 354.— [Rep.

† Pursuant to section 16 of the act such lands may also be aquired by *gift.*—[Rep.

such Commissioners. The Commission was given "jurisdiction and control over all parks which now are or hereafter may become the property of the State of New York in the counties of Nassau and Suffolk." (§ 8.) Three methods of acquiring park property by the Commission for the State were prescribed by the act:* (1) Mutual agreement upon the price between the Commission and the property owner; (2) condemnation proceedings under the general Condemnation Law in the event of the inability of the Commission and the property owner to agree upon the price; and (3) by appropriation (§§ 17–21). Section 21 is as follows: " The Commission, if it shall acquire lands by appropriation, shall acquire them in the manner provided by section fifty-nine of the Conservation Law for the appropriation of certain lands, and all the provisions of such section shall as far as practicable apply to the acquisition of such lands in the same manner and with the same effect as though the lands herein authorized to be acquired, were mentioned in such section." The Conservation Law (Laws of 1911, chap. 647, § 59, added by Laws of 1916, chap. 451, as amd. by Laws of 1919, chap. 290, and Laws of 1921, chap. 206) empowers and authorizes the Commission, " with the approval of the Governor," to appropriate real property for public park purposes, and further prescribes the procedure to effectuate such appropriation. It authorizes the Commission to " enter upon and take possession of any lands * * * the appropriation of which, in the judgment of said Commission, shall be necessary for public park purposes." The Commission is required to make an accurate description of such property so entered upon and appropriated, certifying under its seal the correctness of the description, and indorsing thereon a notice that the property described is appropriated by the People of the State of New York for the purpose described in the act. The Commission is required to file the certificate in the office of the Secretary of State, and a duplicate, together with notice of the date of filing in said Secretary of State's office, is to be served on the landowner. The Conservation Law then proceeds to say: " and from the time of such service the entry upon and appropriation by the People of the State of the property described in such notice shall be deemed complete, and thereupon such property shall become, and be, the property of the People of the State. Such notice shall be conclusive evidence of an entry and appropriation by the State." (§ 59, subd. 3.) Section 59 of the Conservation Law further provides: " 6. Adjustment of claims by agreement. Claims for the value of the property appropriated, and for legal damages caused by any such appropriation, may be adjusted by the Commission, even though a claim has been filed with the Court of Claims, if the amount thereof can be agreed upon with the owner or owners thereof. Upon making any such adjustment and agreement the Commission shall deliver to the Comptroller a certificate stating the amount due to said owner on account of such appropriation of his land or other property, and the amount so fixed shall be paid by the Treasurer upon the warrant of the Comptroller. * * * 7. Court of Claims, jurisdiction of. Any owner may present to the Court of Claims a claim for the value of such land and legal damages within two years after the service of such notice and papers upon him, unless sooner brought in and made a party by such court. If brought in and made a party by such court, he may file an independent claim in respect

---

* Pursuant to section 16 of the act such lands may also be aquired by *gift.*—[REP.

of such land within three months from the time he is so brought in but not there-
after. If any such claim is not adjusted by agreement, such court shall have
jurisdiction to hear and determine such claim and render judgment thereon.
Upon filing in the office of said Commission, and in the office of the Comptroller,
a certified copy of the judgment of the Court of Claims, and a certificate
of the Attorney-General that no appeal from such judgment has been, or
will be taken, by the State, or if an appeal has been taken, a certified copy of
the final judgment of the appellate court affirming in whole or in part the
judgment of the Court of Claims, the Comptroller shall issue his warrant for
the payment of the amount due the claimant by such judgment, with interest
from the date of the judgment until the thirtieth day after the entry of such
final judgment, and such amount shall be paid by the Treasurer." Pursuant to
the statutory provisions referred to, the Long Island State Park Commission
has, by entry and appropriation, taken some 1,500 acres of land in the county of
Suffolk, of which the plaintiff claims to be the owner. The plaintiff now sues in
equity alleging that the defendants have acted illegally in entering upon and
appropriating the land, and asks that the defendants be excluded from the
premises, of which, the plaintiff says, defendants have taken physical possession
and the further demand for judgment is that the defendants be enjoined from
interference with said property. The questions presented to us arise upon a
motion made by the defendants for judgment on the pleadings upon the grounds
that the court is without jurisdiction of the subject of the action, and that the
complaint does not state facts sufficient to constitute a cause of action. The
plaintiff prevailed at Special Term, and the defendants now appeal. The juris-
dictional question is based upon the theory that the defendants have acted as
the arm of the State and that the action, in legal effect, is against the State which
is immune from suit. In the view that I take of the case, it is not necessary to
decide this question as it becomes immaterial upon a determination, which in
my opinion should be made, that the complaint does not state a cause of action.
The complaint is lengthy. Amongst its allegations, which may be noted at the
outset, is one that the Long Island State Park Commission, prior to the entry
and appropriation, made no effort to agree with the plaintiff for the acquisition
of the property, nor instituted any negotiations tending to an agreement upon the
compensation that ought to be paid. I regard the allegation as irrelevant for the
reason that no such obligation is imposed upon the Commission when the con-
demnation is by entry and appropriation, but is only to be observed when the
condemnation is by judicial proceeding under the Condemnation Law. The two
methods of condemnation have been clearly defined by the courts. Before
invoking the aid of a court in a condemnation proceeding brought, as is usually
the case, by public service corporations, the statute (Condemnation Law [Laws
of 1920, chap. 923], § 4, subd. 5) requires a petition with essential allegations,
amongst them, the inability to agree and the reason of such inability. No such
requirement is imposed upon the State when it directs a taking for State purposes
by entry and appropriation. The Long Island Park Act now under consideration
clearly contemplates the two methods of acquirement, namely, judicial condem-
nation and condemnation by entry and appropriation. By section 19 of the act,
" The condemnation proceedings herein authorized shall be instituted and carried
on by the Commission in its name and *in the manner provided by   *   *   *   the*

*Condemnation Law.*" Section 21 of the act, on the other hand, provides that " The Commission, if it shall acquire lands by appropriation, shall acquire them *in the manner provided by section fifty-nine of the Conservation Law.*" Section 59 of the Conservation Law (Subd. 3) is explicit as to how and when the property taken by entry and appropriation shall be and become the property of the State. The preliminary steps for such taking consist in the making, filing and service of the notices which are made a part of the complaint now being considered. As was said by Judge POUND in *Kahlen* v. *State of New York* (223 N. Y. 383, 388): " Service of the notice of appropriation, under the provisions of the statute, is ' the *vital* act appropriating the lands for which the State must pay.' " The only object, to my mind, which makes the fact of preliminary negotiations an essential in judicial condemnation is to avoid burdening the courts unnecessarily. " The spirit of the statute is to require the plaintiff to keep out of court if it reasonably can, but to permit it to resort to the court when it reasonably ought." (*Stillwater, etc., R. Co.* v. *Slade,* 36 App. Div. 587, 593.) If the matter of negotiations be of any concern where the taking is by entry and appropriation, ample authority is found therefor in subdivision 6 of section 59 of the Conservation Law (*supra*); and if section 21 of the Long Island Park Act is given its proper place in this discussion, under that section (which requires that lands acquired by entry and appropriation shall be acquired " in the manner provided by section fifty-nine of the Conservation Law "), negotiations may be had, and the payment of the price therefor made by the State, if the amount required to pay for the land " can be agreed upon with the owner or owners thereof." The complaint further alleges that the only money appropriated to the use of the Long Island State Park Commission aggregated but $240,000, whereas the property in question is assessed by the town of Islip, in which it is located, at $325,000, and that the property has a fair market value of upwards of $800,000. And it is the theory of the plaintiff that, in the absence of sufficient money in the hands of and at the disposal of the Commission, specifically assigned by the State to the acquisition of the property, the entry and appropriation by the Commission (notwithstanding all the statutory steps were duly taken by it) was ineffectual to take the plaintiff's land for State park purposes. By the Laws of 1924, chapter 602, the State authorized a bond issue of $15,000,000 for the development, improvement and extension of State parks, of which the act specifically stated that $1,000,000 was appropriated for the development of the State park system on Long Island. It is said by the plaintiff that section 5 of that act limited the use of this fund to payment for lands acquired by contract or the satisfaction of judgments and awards in case of a taking by judicial proceeding under the Condemnation Law. If the appropriation must be so circumscribed (as to which I have doubt), we may, nevertheless, ignore it as immaterial, for the reason that a specific money appropriation is not a prerequisite to a valid taking of this land by the State's entry thereon pursuant to the statute. Subtracting from the complaint the allegations already considered, we find the remainder of it constituting the sole charge that the Commission's entry and appropriation, although duly approved by the Governor as required by the statute, was not a valid taking by eminent domain for the reason that the Legislature had made no money appropriation from which payment for the land could be made. And the argument of the learned counsel for the plaintiff, respondent, is, in brief, that the basic principles of the law of " due

process " and " just compensation " require, *for a valid taking by eminent domain,* that there must be such an *existing* appropriation of money. Here are the contrasting situations urged by plaintiff, as I understand its argument: On the one hand, that there must be the existing legislative money appropriation to render the act of entry and appropriation of the land by the Commission valid, the meaning of which, in effect, is that the legislative appropriation must be *adequate,* that is to say, that it must be an amount sufficient to meet the market value of the land. This, plainly, would require a previous investigation by the Legislature as to value, thus constituting the Legislature an appraising board. That such action is contrary to legislative practice need hardly be argued. And, I add in further refutation of the claim, if the legislative appropriation were inadequate, it would be just as vicious as would be the case of no appropriation at all, if such an appropriation were to be held a condition prerequisite to a valid entry and appropriation by the Commission. Further, on the other hand it is claimed by plaintiff that if no previous legislative appropriation were made, the present legislation if upheld permits the Commission to commit the State to wild and extravagant obligations. This assumes improvident action upon the part of the executive branch of the government, for the Commission may not enter upon and appropriate land for public park purposes without the Governor's sanction and approval. Such an assumption should not be adopted by the court. The authorities, as I read them, do not require a present or pre-existing appropriation of money to render valid a condemnation by entry and appropriation by the State through its Commission duly authorized thereto by legislative act. It is sufficient if an *adequate means of payment is provided.* Payment need not precede the taking. It suffices if the statute authorizing the entry and appropriation provides a definite and certain means whereby payment may be obtained. That the statutes under which the defendant Commission and the Governor acted do make proper and comprehensive, as well as adequate, provision for payment of the owner's land seems to me clear and settled by authority. " The constitutional provision (Art. 1, § 7) requiring the compensation to be made to the owner to be ascertained by a jury or by commissioners appointed by the court, *does not apply where the State takes the property.* The State may take possession, go on with its work and await the claim of the owner for compensation. \* \* \* *Where property is taken directly by the State it is not necessary that compensation be specifically provided before appropriation.* The *faith* of the State is *ample security* and it is sufficient if provision is made by law by which the party *can obtain* compensation, and that an impartial tribunal is provided for assessing it. (Cooley Const. Lim. [6th ed.] 692.) " (*Litchfield* v. *Bond,* 105 App. Div. 229, 235.) The reversal by the Court of Appeals of the case just cited (186 N. Y. 66) did not impair the utterances of the learned Appellate Division, but proceeded, chiefly, upon the ground that the statute under consideration *made no provision* for compensation for the property taken. The distinction between judicial condemnation and condemnation by the State by entry and appropriation was exhaustively treated by Judge Vann in *People* v. *Adirondack Railway Co.* (160 N. Y. 225). He pointed out (p. 237) that " In the case of eminent domain, when the State is not itself an actor, compensation for property taken, unless the amount is agreed upon, can be ascertained only through the aid of a court, but otherwise judicial action is unnecessary except as provided by statute." Quoting from the Con-

stitution (Art. 1, §§ 6, 7), that private property shall not be taken for public use without just compensation, and that when private property is taken for any public use the compensation to be made therefor, *when such compensation is not made by the State,* shall be ascertained by a jury or not less than three commissioners appointed by a court of record, Judge Vann said (p. 237): " This language, which presupposes the existence of the power outside of the Constitution, simply regulates the right to use it.    It does not confer the power, but recognizing its existence, surrounds it with proper limitations.    It prescribes no method of action, when the State acts for itself, but marks out certain boundaries which may not be crossed, even by the State.    Within those boundaries, the State, acting through that department which exerts the legislative power, may proceed at will, and the extent, method and necessity of exercising the power to take private property for public use may not be interfered with by either of the other departments of government."    Discussing the meaning of the phrase " due process of law," Judge Vann (p. 238) then said: " In public prosecutions, as well as private controversies, an opportunity to be heard is essential to protect private rights; but here we have a case where the State has the right to take a man's property against his will, although he has been guilty of no wrong.    It is a case where of necessity, if there is any action at all, it must be arbitrary.    The State needs the property and takes it, and while the citizen cannot resist, he has the right to insist upon just compensation to be ascertained by an impartial tribunal.    It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken.    He has a right to his day in court on the question of compensation, *but he has no right to a day in court on the question of appropriation by the State* unless some statute requires it.    (*Matter of Village of Middletown,* 82 N. Y. 196, 201.)    There is no necessity for any safeguard against *taking,* because the right to take is all there is of the power of eminent domain, and is necessarily conceded to exist when the existence of the power is admitted.    Safeguards become necessary only when the question of compensation is reached, and then the courts are careful to see that the owner receives all that he is entitled to.    Until then the courts could not help him, unless some statutory right were invaded, as *the method of taking is within the exclusive control of the Legislature.*    If a statute requires judgment of condemnation, judgment must be had accordingly before the property can be taken, *but otherwise a certificate of condemnation by an executive officer, followed by payment, satisfies every requirement of the Constitution.*    * * *    Just compensation, to be ascertained in the absence of agreement by an impartial tribunal, is an absolute right belonging to the owner of the property taken, but it is not necessary to provide for payment in advance, if a certain, convenient and adequate source and means of payment is provided.    A distinction is made between *direct action by the State* and action under power delegated to a corporation created by the State, as the one *is presumed to be solvent* while the other is not.    Where * * *    *the treasury of the State is pledged to meet the claim,* payment need not be concurrent with the taking."    (Italics mine.)    In *Jerome* v. *Ross* (7 Johns. Ch. 315, 344) Chancellor Kent said: " The commissioners are not trespassers, when the act authorizes them to enter, if they enter before the damages are paid for.    This was so understood and declared, in *Rogers* v. *Bradshaw* [20 Johns. 735], already referred to.    The claim for compensation arises after the use has been had; and the damages cannot well be assessed before they have arisen.    Whatever, therefore, may

be the better construction as to the mode of ascertaining and enforcing the compensation, *it does not affect the right of the commissioners to enter, nor justify the interference of a court of equity to interdict their entry.*" (Italics mine.) In *Crozier* v. *Krupp* (224 U. S. 290) it was held that compensation for property taken under eminent domain need not be made in advance of the taking *if adequate means* be provided for a reasonably just and prompt ascertainment and payment thereof, and that the duty to provide for payment of compensation for property taken under eminent domain may be adequately fulfilled by an assumption of such duty by a pledge either express *or by necessary implication* of *the public good faith to that end.* In that case it is of importance to note that the act of Congress* which authorized the appropriation of the property for the government was silent as to the *means* of payment. Nevertheless, the ruling of the United States Supreme Court was that the act having empowered the owner of the property taken to proceed in the Court of Claims to have his compensation determined, there resulted a sufficient guaranty of payment by the government on the assumption of public good faith alone. In *Matter of Van Etten* v. *City of New York* (226 N. Y. 483), which involved the taking of property by the city of New York, the distinction between condemnation instituted by a municipal corporation and condemnation by the State was pointed out by Judge Collin (p. 489), as follows: " The payment of the compensation and the passing of the title are, presumptively, simultaneous acts. * * * The rule may be and commonly is changed by statute. The title may, by force of a statute, become vested before payment or award of compensation if an adequate and legally certain remedy is provided whereby the owner may compel payment of his compensation. But it is the divesting of title which entitles to the compensation and he from whom the title is taken, and not his grantor or grantee, is to be paid the compensation awarded. * * * When the *State* is the condemnor the statute probably need not provide the specific assurance of the payment or recovery of compensation." In *Kahlen* v. *State of New York* (223 N. Y. 383, 388) it was said (Pound, J., writing for the court): " The appropriation is deemed complete *from the time of the service of the notice which is made conclusive evidence of the taking and is binding on all concerned.* When the lands are appropriated the owners are entitled to have their damages assessed and paid in money. ' It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken ' (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 238), and has a right to insist upon payment. (*Jackson* v. *State of N.· Y.*, 213 N.· Y. 34, 35, 36.) Service of the notice of appropriation, under the provisions of the statute, is ' the *vital* act appropriating the lands for which the State must pay.' * * * This limitation [the just compensation clause of the Constitution] does not deny the power of the State to take to itself for its own public use the absolute title to specific private property, provided the statute recognizes the absolute right of the owner, upon the taking of the property, to just compensation and *makes provision for the prompt determination and payment of such compensation from the public funds.* * * * No other limitations are placed upon the right to take. Compensation is not a condition precedent to a valid appropriation." (Italics mine.) In *Talbot* v. *Hudson* (16

---

*See 36 U. S. Stat. at Large, 851, chap. 423, approved June 25, 1910. Since amd. by 40 id, 705, chap. 114, § 1, approved July 1, 1918.— [REP.

Gray [Mass.], 417), where the proceedings for taking were under authorization similar to that at bar with the exception that the payment of damages was to be made out of the State treasury upon the Governor's warrant for the amount, the court (p. 431) say: " The validity of the statute is called in question by the plaintiffs on the further and distinct ground that it contains no reasonable, certain and adequate provision for compensation to those whose property may be taken and appropriated in carrying out the purposes of the act. But it seems to us that there is an obvious and decisive answer to this objection. By the third section of the act, it is provided that the damages which may be recovered on due proceedings had by the parties injured shall be paid out of the treasury of the Commonwealth, and the Governor is authorized to draw his warrant therefor. *This is clearly an appropriation of so much money as may be necessary to pay the damages which may be assessed under the act.* The provision could not be more explicit or definite as to the amount appropriated. Until the damages are ascertained and adjudicated, the sum which will be required to pay them *is necessarily uncertain.* There is no provision of law, which makes it requisite to the validity of an appropriation from the treasury of the Commonwealth that a specific sum should be named and set apart as a fund to meet a particular exigency. It is sufficient if by an act or resolve passed during the same or the preceding political year the payment is authorized. * * * That such an appropriation affords a remedy sufficiently adequate and certain is too clear to admit of doubt. *It is a pledge of the faith and credit of the Commonwealth, made in the most solemn and authentic manner,* for the payment of the damages as soon as they are ascertained and liquidated by due process of law. Unless we can say that such a provision affords no reasonable guaranty that the persons injured will receive compensation, we cannot adjudge the statute to be unconstitutional. *We certainly cannot assume that the Commonwealth will not fulfil its obligations.* The presumption is directly the other way. Indeed the plaintiffs do not aver in their bill that the damages which may be awarded to them under the act will not be duly paid. How then can it be said that no suitable and adequate provision is made in the act, by which the plaintiffs can receive the compensation to which they may be entitled? The answer to the argument that no process is provided by which the payment can be secured and enforced is, that no such provision is necessary in cases where the power of eminent domain is exercised immediately *by the State itself, in pursuance of a statute which enacts that compensation is to be made by a warrant drawn by the Governor of the Commonwealth upon the public treasury.* We are bound to presume that the chief magistrate of the State will perform his duty by drawing his warrant in conformity with the requirements of law, and that payment of a public debt thus created will be duly made in like manner as all public dues and liabilities are paid out of the treasury of the State. The elementary principle that the sovereign can do no wrong is the foundation on which rests the rule, recognized in our jurisprudence, by which the State is exempted from being subject to process at the suit of a creditor. *The presumption of law is, that the State will keep its faith inviolate, and honestly fulfil all its obligations.*" (Italics mine.) Regarding the case from which I have just quoted at length, it may be remarked that if the courts will indulge in the presumption as one of law, that the Governor would perform his duty on the basis of good faith, *a fortiori* should we hold in favor of the adequacy of the provisions for payment contained in the statutes now before

us where the duty of the Comptroller to draw his warrant on the treasury may be compelled by mandamus. When the defendant Commission made and filed the requisite certificates, coupled with due approval by the Governor, these steps became " the vital act appropriating the lands for which the State must pay." (*Ontario Knitting Co.* v. *State*, 205 N. Y. 409, 417.) The State, having the right of condemnation by entry and appropriation and having made due entry upon and an appropriation of the land, " the owner has the correlative right to insist upon payment." (*Jackson* v. *State of N. Y.*, 213 N. Y. 34, 36.) The Court of Claims Act (§ 25) requires the judgment of that court on a claim where the State has appropriated land for public use to contain a description of the land, with a further provision for the payment of the judgment on the warrant of the Comptroller; and it has been held that " These provisions would seem to contemplate payment for general condemnation by the State as well as for specific instances and purposes." (*Litchfield* v. *Bond, supra*, 235.) But we are not limited to the Court of Claims Act in order to determine the source of payment, for the statutes under consideration make ample and comprehensive provision for the issuance of the Comptroller's warrant for the payment of the judgment and the State Treasurer's duty to pay the same. No instance has been called to our attention where the State of New York has refused to pay a judgment of the Court of Claims which it has authorized that court to render. The case of *Rockaway Pacific Corporation* v. *Stotesbury* (255 Fed. 345) has been urged by the respondent as an authority in support of its point that there must be a present or pre-existing legislative appropriation for the property taken. The case was decided by a divided court, but even if we accept the majority view, the statute there under review, as was stated by Circuit Judge Ward: " goes no further in protection of the land-owner than to provide the manner in which the amount of his compensation shall be ascertained." The statute there criticised failed to express how the compensation, when ascertained, should be paid. There was no provision, as is here the case, requiring the Comptroller to draw his warrant on the Treasurer and commanding the latter officer to make payment. The most that the statute did was to permit the fixation of the amount of compensation. The method or means of payment was not stated. Therefore, the cited case and the one at bar are quite different in this most important respect. Due process of law, as it is generally understood, having been observed in the entry and appropriation under and pursuant to legislation authorizing the steps taken by the defendant Commission and the Legislature having made due provision for ascertaining and paying the property owner's damage, it seems to me that the complaint does not state a cause of action and that it should have been dismissed.

Kelly, P. J., concurs.