ONTARIO KNITTING COMPANY, Appellant, v. THE STATE OF NEW YORK, Respondent.

Eminent domain — barge canal — power of state engineer, under Barge Canal Act, to appropriate land for the canal— erroneous use of such power.

1. All persons are chargeable with knowledge of the powers and duties of public officers, and where the statute authorizes an officer to exercise the right of eminent domain and the instituting of condemnation proceedings, the statute should be strictly construed; and if it requires the exercise of judgment and discretion on the part of the officer, his powers, in their nature, are judicial and cannot be delegated.

2. By the provisions of section 4 of chapter 365 of the Laws of 1906, amending chapter 147, Laws of 1903, the state engineer was authorized to take possession of such lands for the purposes of the barge canal as "shall in his judgment be necessary." This power was delegated to him by the people of the state in electing him to the position, and it is his judgment and discretion that they rely upon in exercising the functions of his office. He cannot delegate such power to a subordinate appointee unless he is in plain terms authorized so to do by the legislature. The act was not intended to invest a special deputy provided for thereby with the judgment, powers and discretion of the engineer with reference to the appropriations of lands of others for canal purposes; hence the certificate of such deputy that the lands therein described have been appropriated for the use of the canals of the state is insufficient.

3. Under the statute no plans for the construction and improvement of the canals can be adopted except by the approval of the superintendent of public works and the canal board. Lands for canal purposes cannot be taken by the engineer until the canal lands have been located by the canal board and the plans for its improvement have been approved; hence the state engineer, in making a change in the plans and specifications for the canal which not only increases the expense of the work but *creates a claim against the state* under which the claimant demands upwards of a million dollars in damages, exceeded his authority and such acts are void.

*Ontario Knitting Co.* v. *State*, 147 App. Div. 316, affirmed.

(Argued March 25, 1912; decided May 14, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 29, 1911, which affirmed a judgment of the Court of Claims dismissing plaintiff's claim.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*Benjamin N. Cardozo, Charles N. Bulger* and *Udelle Bartlett* for appellant. The appropriation did not involve a change of the plans of construction within the meaning of section 6 of the Canal Law, and the assent of the canal board was not requisite therefor. (L. 1903, ch. 147, §§ 4–6; *People* v. *Fisher,* 116 App. Div. 677.) The contention is untenable that there was any wrongful delegation by the state engineer of the exercise of his judgment. (L. 1909, ch. 23, § 71; L. 1909, ch. 51, § 9; *People ex rel. Grannis* v. *Roberts,* 45 App. Div. 145.)

*Thomas Carmody, Attorney-General (Joseph A. Kellogg* and *Valentine Taylor* of counsel), for respondent. The power to exercise the right of eminent domain delegated to the state engineer by section 4 of the Barge Canal Law limits his powers to appropriate land within the lines of the canal. (L. 1903, ch. 147.) The action of the special deputy state engineer in attempting to appropriate these lands is in any event invalid. (*Birdsall* v. *Clark,* 73 N. Y. 73; *Matter of Harris,* 12 Misc. Rep. 223; *People* v. *Rosendale,* 5 Misc. Rep. 378; *People* v. *Jerome,* 36 Misc. Rep. 256; *Gaines* v. *Thompson,* 74 U. S. 347.) The appropriation of the land in question was in effect a change of plans which could not be effectuated except by permission of the canal board. (L. 1903, ch. 147, § 6.)

HAIGHT, J. The Ontario Knitting Company, on the 25th day of March, 1909, filed a claim in the office of the clerk of the Court of Claims against the state, in which

it seeks to recover the sum of $1,019,051.78, as the value of real and personal property which it claims the state had appropriated for canal purposes in the city of Oswego. The land abuts upon the old Oswego canal with a frontage thereon of upwards of 600 feet, and extends through to an hydraulic canal in the rear. It is occupied by large brick and wooden buildings covering substantially the whole of the land, and at the time was used as a knitting mill or factory.

Under chapter 147 of the Laws of 1903, known as the Barge Canal Act, one hundred and one millions of dollars in state bonds were authorized to be issued, by the vote of the people, for the improvement of the Erie, Oswego and Champlain canals. It provided that the route of the Oswego canal shall begin at the junction of the Oswego, Seneca and Oneida rivers, and shall run northward to a junction with Lake Ontario at Oswego, following the Oswego river canalized and the existing Oswego canal. The statute provided that the work should be done by contract, that the engineer should divide it into sections and should make maps, plans and specifications for the work in detail, and, when the same was adopted or approved by the canal board, should file such maps in his office and a copy thereof in the office of the superintendent of public works. Pursuant to such provision of the statute the engineer, in the year 1906, prepared maps, plans and specifications for the improvement of the canal adjoining the claimant's property, which was known as section 35. Such plans and specifications followed the lines of the old canal but provided for the removing of the towpath abutting upon the claimant's premises, thus widening the canal at that point and provided for the construction of a concrete wall of at least four feet in thickness at the top, and at the same time for the underpinning of the claimant's wall to a portion of the building which did not extend down to the solid rock for the space of about 100 feet. The towpath, so

called, belonged to the state and was within the blue line marking the exterior of the canal lines, and the plans so filed did not call for the taking of any of the property of the claimant, but provided for the extending of the walls of claimant's building down to the rock. Upon the advice of the attorney-general, to the effect that the state had no right to enter upon the claimant's land for the purpose of underpinning the wall, this portion of the plan was abandoned, and the same was approved by the advisory board of state experts and by the canal board on May 28th, 1907, and the same was then filed in the office of the superintendent of public works; and on the 16th day of September, 1907, the contract was let for the performance of the work. Subsequently and while the work was in progress by the contractor, a map of the claimant's property was made, and attached thereto is a certificate that " this is an accurate map made from an accurate survey," and signed by Henry B. Brewster, division engineer. Following this certificate is another, as follows: " I certify that the land described on this map has been permanently appropriated for the use of the canals of the state. Dated December 31, 1907. W. R. Hill, Special Deputy State Engineer." Following this is another certificate, as follows: "I certify that this is a duplicate copy of a map prepared by me and on file in my office. Frederick Skene, State Engineer and Surveyor." This map, with the certificate attached, was filed in the office of the superintendent of public works on the 2d day of January, 1908, and a notice thereof was served upon the property owners by Winslow M. Mead, deputy superintendent of public works. The map was made by George H. Haley, traced by A. W. Andrews and checked by E. Styring. Subsequently, and on April 15th, 1908, the superintendent of public works, questioning the necessity and legality of the appropriation, wrote to the state engineer asking the reasons for such appropriation. This letter was not answered by

the engineer. But under date of April 21st, 1908, the special deputy engineer, Mr. Hill, wrote the engineer a letter, in which he made the claim that the engineer had the power, under section 4 of the Barge Canal Act, to appropriate the land without the approval of the advisory board; that the plan of the canal encroaches upon the bed of the river; that it was already too much confined, and would be liable to cause water to back up in the tail races of the mill on the opposite side of the river, thereby incurring a claim for damages against the state, and that the lands taken, under the certificate, from the claimant could be used for a terminal and facilitate the tying up of boats in passing the locks. Thereupon the canal board adopted a resolution requesting the state engineer to appropriate only so much of the land as was necessary to shore up the claimant's wall; but subsequently the plans were changed by the canal board, by moving the canal to the west, thus obviating the necessity for the underpinning of the claimant's walls, and upon that plan the barge canal was constructed and the work completed by the contractor, and no part of the claimant's land has ever been touched or used. The Court of Claims found as facts and conclusions of law that the appropriation of the claimant's land was unnecessary, and was the result of the absence of the exercise of any judgment on the part of the engineer; that he acted without the exercise of any judgment arbitrarily and capriciously; and that the attempted appropriation was wholly unauthorized and illegal and void.

The Barge Canal Act, *supra,* as amended by chapter 365 of the Laws of 1906, provides as follows:

"Section 4. Acquisition of lands.— The state engineer may enter upon, take possession of and use lands, structures and waters, the appropriation of which for the use of the improved canals and for the purposes of the work and improvement authorized by this act, *shall in his judgment be necessary.* An accurate survey and map of

all such lands shall be made by the state engineer who shall *annex* thereto his certificate that the lands therein described have been appropriated for the use of the canals of the state. Such map, survey and certificate shall be filed in the office of the state engineer, and a duplicate copy thereof, duly certified by the state engineer to be such duplicate copy shall also be filed in the office of the superintendent of public works. The superintendent of public works shall thereupon serve upon the owner of any real property so appropriated a notice of the filing and of the date of filing of such map, survey and certificate in his office, which notice shall also specifically describe that portion of such real property belonging to such owner which has been so appropriated. * * * From the time of the service of such notice, the entry upon and the appropriation by the state of the real property therein described for the purposes of the work and improvement provided for by this act, shall be deemed complete, and such notice so served shall be conclusive evidence of such entry, and appropriation and of the quantity and boundaries of the lands appropriated."

Section 8. (L. 1903, ch. 147.) "* * * The state engineer may appoint and at pleasure remove a special deputy, at a compensation to be fixed by him with the approval of the canal board, who may, under the direction of the state engineer, perform *on the work* of improvement authorized by this act, all the duties of the state engineer, except as commissioner, trustee or member of any board."

Under the provisions of the Constitution (Article 5, sections 3, 5, 6) the superintendent of public works "shall be charged with the execution of all laws relating to the repair and navigation of the canals, and also of those relating to the construction and improvement of the canals, except so far as the execution of the laws relating to such construction or improvement shall be confided to the State Engineer and Surveyor. * * * The Super-

intendent of Public Works shall perform all the duties of
the former Canal Commissioners and Board of Canal Com-
missioners, as now declared by law, until otherwise pro-
vided by the Legislature."

The canal board consists of the lieutenant-governor,
secretary of state, comptroller, treasurer, and attorney-
general, and the board possesses such powers as now are or
hereafter may be prescribed by law. Under the provisions
of the statute the canal board is empowered to determine
the boundaries of the three divisions of the canals of the
state and change such boundaries when deemed expe-
dient, and to examine and approve or disapprove by a
resolution to be entered upon its minutes, all plans, speci-
fications and estimates transmitted to it by the state
engineer, and a certificate of such approval, when given,
shall be indorsed by the clerk of said board upon each of
such plans. (Canal Law, Laws of 1909, chapter 13.)
The state engineer and surveyor is given the general
supervision of the engineering department of the canals
and shall perform all duties in relation thereto required
by the canal board or by the superintendent of public
works. When construction or improvement work upon
any of the canals is ordered by the legislature or the canal
board, he shall make, or cause to be made, all surveys,
maps, plans, specifications and estimates required by the
canal board, or the superintendent of public works, for
the purpose of determining the proper location of the line
of the canal, or any portion thereof, or otherwise neces-
sary, preparatory to the commencement of such work.
He shall transmit such survey, maps, plans, specifications
and estimates with his approval thereof to the superin-
tendent of public works and the canal board, and, if the
same is adopted by such board, file the same in his office
and a copy thereof in the office of such superintendent.
(Section 60, subdivisions 1–5.)

The first question presented for our consideration is as
to whether there was a valid appropriation by the state

of the lands of the claimant.   All persons are chargeable
with knowledge of the powers and duties of public offi-
cers, and where the statute authorizes an officer to exer-
cise the right of eminent domain and the instituting of
condemnation proceedings, the statute should be strictly
construed; and if it requires the exercise of judgment
and discretion on the part of the officer, his powers, in
their nature, are judicial and cannot be delegated.
(*Washington Cemetery* v. *Prospect Park & Coney
Island R. R. Co.*, 68 N. Y. 591; *Matter of New York &
Harlem R. R. Co.* v. *Kip*, 46 N. Y. 546; *Matter of South
Beach R. R. Co.*, 119 N. Y. 141; *Birdsell* v. *Clark*, 73
N. Y. 73; *Matter of Emigrant Ind. Sav. Bank*, 75 N. Y.
388, 393; *State* v. *City of Paterson*, 34 N. J. L. 163;
*Schwartze* v. *City of Camden*, 77 N. J. Eq. 135; *Brown*
v. *City of Newburyport*, 209 Mass. 259, 264; *Gaines* v.
*Thompson*, 74 U. S. 347; 29 Cyc. 1433, and see authorities
there cited.)

As we have seen, by the provisions of the statute
quoted, the state engineer was authorized to take posses-
sion of such lands for the purposes of the canal as "shall
in his judgment be necessary."   Here we have an extra-
ordinary power vested in the engineer to appropriate the
lands of private individuals.   If in his judgment he
deems such lands necessary for the purposes of the canal,
the exercise of his judgment is, in its character, judicial
and not ministerial.   It is a power that has been dele-
gated to him by the people of the state in electing him to
the position, and it is his judgment and discretion that
they rely upon in exercising the functions of his office.
He, therefore, could not delegate such power to a
subordinate appointee unless he was in plain terms author-
ized so to do by the legislature.   Under the 8th clause of
the act to which we have alluded the engineer is author-
ized to appoint a special deputy "who may, under the
direction of the state engineer, perform *on the work* of
improvement authorized by this act all the duties of the

state engineer except as commissioner, trustee or member of any board." It will be observed that the duties of the special deputy are to be performed "on the work." That is, upon the canal where it is being improved or enlarged. It does not in terms, nor do we think it was intended, to invest such deputy with the judgment, powers and discretion of the engineer with reference to the appropriation of lands of others for canal purposes. The powers so given to the engineer are, if as broad as is claimed, most extraordinary, and he may, if he so determines, involve the state in paying fabulous sums of money for lands for which it has no use. Surely it was not intended that such powers should be delegated to a deputy under the provision of the statute quoted. As we have seen from the findings referred to, the engineer never exercised his judgment in a determination to appropriate the claimant's land, nor did he sign a certificate therefor. Under the statute an accurate survey and map of the lands are required to be made by the state engineer, "who shall annex thereto his certificate that the lands therein described have been appropriated for the use of the canals of the state." Doubtless the making of the survey and the drawing of the map thereof, with a description of the lands, was a ministerial act which could be delegated to subordinates to perform for him. But when it comes to the annexing of the certificate appropriating the lands to the use of the state, that certificate is required to be made by the engineer himself, based upon his own judgment, and it becomes the vital act appropriating the lands for which the state must pay. As we have seen, the certificate was not signed by him, but was signed by the special deputy, and it was then filed in the office of the engineer. Whether the engineer knew of it or not, we are not advised by the findings in the case. But subsequently we do find that another certificate was executed by the engineer, in which he certifies, without

27

date, that it is a duplicate copy of a map prepared by him on file in his office, and that map was transmitted to the office of the superintendent of public works where it was filed and a notice served upon the landowner. It will be observed that the certificate refers to a map. It does not mention the certificate attached to the map, which gave the map life and power as an appropriation of land. That certificate he ignores entirely, giving no reason therefor. The certificate appropriated real estate of a value bordering upon a million of dollars. It was for lands that were not needed and have never been used for canal purposes. Such an appropriation of lands could hardly escape attention and criticism, when the state was called upon to pay therefor. As it stands, the engineer can plead his ignorance of the making and filing of the certificate. He can show that he did not approve of, or adopt, the certificate and that he only certified as to a duplicate copy of a map on file in his office. If, therefore, he did authorize the filing of the map, it is, as claimed by the learned attorney-general, suggestive of a most striking light upon the situation as indicating his unwillingness to perform himself the vital act which would put him on record and possibly make himself personally liable for the act. We, therefore, conclude that there was no appropriation of the claimant's land by the engineer, and that his special deputy had no power to make the certificate in question.

We have, thus far, considered the case upon the assumption that the power of the engineer to appropriate lands in his discretion was unlimited. But there is another view to such a construction of the statute. As we have seen, the state engineer has general supervision of the engineering department of the canals and performs all of the duties required by the canal board or the superintendent of public works, and when construction or improvement work upon the canals is ordered by the legislature or the canal board, he is required to make

surveys, maps, plans, specifications and estimates required
by the canal board or the superintendent of public works
and transmit such surveys, maps, plans, specifications
and estimates to the superintendent and the canal board
for their approval. No plans can, therefore, be adopted
except by the approval of the superintendent and
the canal board. In this case it appears that the
engineer had made his surveys, maps, plans, specifica-
tions and estimates, and that they had been approved
by the expert consulting engineers, provided for in the
statute, and approved by the superintendent and the
canal board. The contract had been let and the work
called for by the contract had been partially performed,
when the certificate of appropriation was filed. Shortly
after it had been filed the superintendent of public works
called upon the engineer for an explanation. This letter
he appears to have transmitted to the special deputy who
subsequently answered, giving his reasons for the appropri-
ation of the land which would necessitate an entire change
of the contract, involving a large expenditure in a change
of the work besides the value of the land appropriated.
No such plans had ever been reported to the consulting
engineers, the superintendent of public works, or the
canal board; nor had such plans been approved by them,
or either of them. Under the statute then in force the
power to determine the boundaries of the canal and to
locate terminal basins was vested in the canal board, and
under a subsequent act the state engineer, superintendent
of public works, chairman of the advisory board of con-
sulting engineers, and the special examiner and appraiser
of canal lands, were constituted a commission to provide
terminal facilities for the canals of the state. And yet
without orders from the canal board or plans submitted
to it for its approval or that of the superintendent of pub-
lic works, the engineer proceeded to condemn and take
the lands in question for terminal facilities and for the
purpose of affording space to tie up boats, claiming to

have the power to appropriate these lands under section 4 of the statute to which we have referred. But we think that that section must be read in connection with the other provisions of the act and construed accordingly, so that each provision, if possible, may be made to harmonize with the other. So reading it, we think that the lands for canal purposes could not be taken by the engineer until the canal lands had been located by the canal board and the plans for the improvement of the canal had been approved; for prior to such location and adoption of plans, it could not well be determined as to what land would or would not be necessary for canal purposes.

Again, section 6 of the act provides: "No alteration shall be made in any such map, plan or specification, or the plan of any work under contract during its progress, except with the consent and approval of the superintendent of public works and the state engineer, nor unless a description of such alteration and such approval be in writing and signed by the parties making the same and a copy thereof filed in the office of the state engineer. No change of plan or specification which will increase the expense of any such work or *create any claim against the state for damage arising therefrom* shall be made unless a written statement, setting forth the object of the change, its character, amount and the expense thereof, is submitted to the canal board, and their assent thereto at a meeting when the state engineer was present is obtained." And yet, while this work was under progress by the contractor, the engineer, without notice to the superintendent or the canal board, has undertaken to make a change in the plans and specifications which not only increases the expense of the work but *creates a claim against the state* under which the claimant demands upwards of a million dollars in damages. Our conclusion is that the engineer exceeded his authority, and that consequently his acts were void.

The judgment should be affirmed, with costs.

CULLEN, Ch. J. (dissenting). I dissent from the decision about to be made. I concede that the power conferred upon the state engineer, to appropriate such lands as in his judgment he deemed necessary for the purposes of the work in the improvement authorized by the statute, involved the exercise of his judgment and discretion and could not be delegated unless such delegation was authorized by statute. It is at least doubtful whether under section 8 of the Canal Act the state engineer was not authorized to delegate the function to his deputy, for it was provided that such deputy might, under the direction of the state engineer, " perform on the work of improvement authorized by this act all the duties of the state engineer except as commissioner, trustee or member of any board." In fact, the great mass of appropriations of land for the new canal have been thus made. The length of the canal must be about 350 miles and the number of separate pieces of land to be appropriated for its construction very numerous. It would seem that practically it would be difficult for the state engineer to examine personally the necessity or the propriety of the acquisition of each piece of land required for the improvement. However that may be, in the case before us the state engineer personally, and under his own hand, certified the map showing the appropriation of the claimant's property to the superintendent of public works and thereby ratified and approved the appropriation made by his deputy. It seems to me too narrow and technical a construction of his action to say that he certified to the superintendent of public works merely the map, not the certificate of appropriation, for unless the land was appropriated he had no duty to certify to the superintendent anything on the subject. The appropriation of the claimant's factory property seems to have been very ill-advised, but all the steps required by law were taken by the state officers, and the statute provides that the notice served by the superintendent of public

works on the landowner shall be "conclusive evidence of such appropriation and of the quality and boundaries of the lands appropriated." I think the landowner has the right to rely on the notice so served. It seems unreasonable to require a landowner, possibly from a most remote part of the state, to visit the capitol, examine the records in the offices of both the state engineer and the superintendent of public works and, if the second point in the opinion of the majority of the court is correct, not only to examine the action of the canal board but also to determine at his peril whether any appropriation made by the engineer and commissioner of public works would or would not involve an increase in the cost of the work. Of course, this is said in the absence of collusion between the state officials and the claimant, a fact which has not been found, though the appropriation of the claimant's land seems to have been unnecessary. The claimant having erected structures on its land was not, in the absence of some special statute, entitled to the lateral support of the adjacent land owned by the state. (*Dorrity* v. *Rapp*, 72 N. Y. 307.) Our attention is called to no such statute, and where special statutes on the subject have been enacted, as in the case of the cities of New York and Albany, the duty of one, making excavations on his own land below the prescribed depth, to support the structures of his neighbor is dependent on the neighbor giving him permission to enter upon the land for such purpose. Nevertheless, there appears to have been so much question on the matter, that subsequently the canal was shifted to the east so as not to affect the plaintiff's building.

There is also to be said that a subsequent excavation on the claimant's land might have undermined the structure of the canal, and to guard against this danger it might be necessary to appropriate lands lying outside of the limits of the structure itself. What, however, were the

motives of the state authorities, unless there was collusion
between the parties, the claimant was not bound to
know and if it had inquired it could not have learned.
It could not require the state engineer to say why he
appropriated the lands or examine him on òath as to his
reasons therefor. I think, therefore, that the validity of
the plaintiff's claim depends on the question whether the
appropriation of its land was collusively made. That is
a question of fact which must be determined by the trial
court, and for this reason the judgment should be reversed
and a new trial granted.

GRAY, VANN and WERNER, JJ., concur with HAIGHT,
J., and HISCOCK, J., concurs in result; COLLIN, J., concurs
with CULLEN, Ch. J.

Judgment affirmed.