DAVID SCHULMAN et al., Respondents, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Third Department, July 27, 1960.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Paxton Blair* of counsel), for appellant.

*Morris M. Oppenheim* for respondents.

BERGAN, P. J. The State of New York has appropriated an easement in the plaintiffs' lands for a public purpose under an authority asserted to exist pursuant to statute. Plaintiffs challenge the right of the State to condemn the easement by this action pursuant to article 15 of the Real Property Law; and the Sullivan County Court has denied the State's motion to dismiss the complaint.

As the case reaches this court, with the pleaded facts conceded for the purpose of the motion, if authority at law exists to condemn the easement and if the State has been sufficiently definite in describing just what interest in plaintiffs' property is being appropriated, the complaint should be dismissed; otherwise the order should be affirmed.

The easement appropriated is one "to be exercised in, on and over" the property, which itself is set out by adequate metes and bounds, "for the restriction, removal and prohibition" of any outdoor sign, display, billboard or similar visual advertising or informing device which is visible and capable of being seen by a person of normal visual acuity from the adjacent State highway.

The plaintiffs' property in which this easement or right is to be acquired extends about 1,100 feet adjacent to the Monticello By-Pass, a limited access highway principally on a new location, the acquisition of land for which resulted in the taking by the State of fee title to some of plaintiffs' property, an issue not in this case.

Plaintiffs argue there is no authority in law permitting the State to acquire the easement or an interest in real estate for the purposes of eliminating signs and billboards in furtherance of highway safety. The State on its motion to dismiss, relies on subdivision 2 of section 30 of the Highway Law which, in respect of construction, reconstruction, and improvement of State highways authorizes the Superintendent of Public Works to "acquire by appropriation any and all property" necessary "to improve safety conditions on the state highway system".

The term "property" has this clear statutory implementation: that it include uses; easements, permanent and temporary; "and all other incorporeal hereditaments and every estate, interest or right legal or equitable".

The State's contention on appeal is that the described interest in plaintiffs' real property is being taken by eminent domain for a public purpose and in exact conformity with the statute authorizing acquisitions "to improve safety conditions on the State highway system".

Plaintiffs contend that elimination of outdoor advertising and displays will not improve safety conditions on the highway system of the State and, therefore, the interest in land to be taken for this purpose is not "necessary for" any of the public purposes defined by the statute.

But the decision of what is necessary for the improvement of safety conditions on highways is committed to the Superintendent of Public Works and unless his decision to acquire and pay for land for this purpose is a mere naked act of power and exercised without rational basis or logical relationship to his public duty and authority, the court should not interpose its views of the necessities of public safety on the highways by overruling the Superintendent's judgment within the area of his authority and competence.

To put it another way, if the elimination of a curve on a road were determined by the Superintendent to be good for highway safety no judge would think of stopping the State from acquiring, by eminent domain and for just compensation, the land necessary to do this; and when the landowner received adequate compensation for all his damage for the taking, that would be the end of the matter.

We would not ordinarily allow the landowner to litigate with the State the issue whether it would be better, as the Superintendent of Public Works believed, to eliminate the curve or to follow the landowner's judgment and leave it alone.

Thus, too, we would treat the elimination of sight blocks, interference by buildings, trees, or topographical features of the land, with the visibility range of users of the public highways or the elimination of any of the other numerous kinds of physical conditions on private land which could reasonably cause or increase traffic hazards. In all this we are dealing with an imposed use of the land by eminent domain for which the owner gets compensation; and not the assertion of a public power to which he must yield with no compensation.

Bright lights glaring from private buildings onto the road would be one such instance; and it is not a far step from this (a mere matter of degree) to moving displays or still, advertising material so ingeniously contrived as to succeed in its purpose of winning the attention of drivers of motor vehicles and by resulting distraction affecting public safe driving, increasing in the judgment of the Superintendent, and indeed in the common judgment of the community, the hazards of the road.

To say all this is to say that the elimination of advertising displays along the heavily travelled highway has a rational conjunction with safety of the road; and this means that the Superintendent is not arbitrary in his judgment that the State should acquire and pay the owner for the right to eliminate it.

If such a rational relationship between the purpose of the statute and the exercise of the power to acquire land for that purpose is shown to exist, it is settled law that the necessity for the taking is not ordinarily tried out by the court, but it is conclusively presumed.

The law is well settled in New York, as indeed, it is elsewhere. A comprehensive examination of the problem was made in 1916 by HISCOCK, J., in *Matter of Public Serv. Comm.* (217 N. Y. 61) and the rule is not now different.

There the answer interposed by the property owners in the proceeding to condemn land for a rapid transit railroad, which alleged lack of necessity for taking the land, was stricken in

spite of further factual allegations that the condemning public authority was not actually of opinion that the land was necessary; and that the condemning agency acted for ulterior purposes in undertaking to acquire it. On abundant authority the rule was there adhered to: if the purpose is a public purpose and lies within authority of law, the necessity for the taking will not be judicially examined.

There is in *Fifth Ave. Coach Co.* v. *City of New York* (194 N. Y. 19) very strong implications of an acceptance by the court of the thesis that signs and advertising devices in crowded streets have an adverse effect on safety; and the crowded streets of 1909 when that case was decided were not more dangerous than the high-speed, controlled-access highways of our times.

Moreover, if public land acquired for highway purposes could be used in the interest of highway safety to erect a barrier to cut off sight of an advertising sign deemed by the Superintendent of Public Works to be dangerous, and public money presumably used to erect the barrier to screen the advertising sign just at a " bridge approach, on a pronounced curve in a narrow road " (*Perlmutter* v. *Greene,* 259 N. Y. 327, 329), the public purpose involved in the case before us is not far removed in principle.

Nor is it necessary that full title of the land be taken; the part of the title needed for the public purpose is enough. For example, in *Matter of Bushwick Ave.* (48 Barb. 9) the General Term affirmed an order confirming a report of commissioners in a street-widening condemnation where the right of owners to use the adjacent property for purposes other than courtyards was acquired and they were allowed to continue to have and use courtyards on the land. And in *Matter of City of New York* (*Clinton Ave.*) (167 N. Y. 624) the court decided that the land on the sides of an avenue acquired for ornamental purposes and cutting down but not extinguishing rights of the owners in such property was a valid public use. (See, also, discussion in this case *sub nom. Matter of Clinton Ave.,* 57 App. Div. 166.)

The argument for strict construction of every public power to condemn private property, urged by plaintiffs, will be seen on close examination to turn largely on acquisitions by private corporations vested with public uses, such as a railroad (*Matter of New York & Harlem R. R. Co.* v. *Kip,* 46 N. Y. 546) or a telephone company (*Bell Tel. Co.* v. *Parker,* 187 N. Y. 299).

Where a State officer acts in pursuance of a general statute there is certainly no judicial compulsion to read the statute heavily weighted against the exercise of a right of acquisition

for which the State is willing, and must, pay just compensation. The function of the Superintendent of Public Works should not be narrowly construed in this respect, where his purpose may reasonably be seen by the court to move in the direction of improving safety conditions on public roads under an affirmative statutory mandate to do so.

Moreover, the appropriation is sufficiently definite. It excludes the owner from specific things clearly understandable and which cannot be readily misconstrued. This is not a case where a telephone company seeks to condemn a right to trim " such trees as may be necessary to protect " its line — language which would leave open to the company's judgment from time to time how much of the owner's land would be interfered with (*Bell Tel. Co.* v. *Parker, supra,* p. 303).

The measure of " normal visual acuity " is not some indefinite concept in a vacuum; it is not an abstraction; it is as certain of measurement and as ascertainable as a normal body temperature or a normal pulse rate.

The fact that some signs under limited circumstances, for example the owner's own business premises, will not be prohibited when the State has acquired the easement, does not destroy the public purpose. Safety is a matter of degree; and the elimination by the Superintendent of what he regards as a substantial quantum of distracting and hazard-producing material could be a necessary implementation of the statutory injunction to increase safety even if all of the material were not entirely gotten rid of.

Plaintiffs argue that the appropriation amounts to very substantial interference with their rights in this property; but if it be true that the interference by the taking is substantial, it would follow that the just compensation to which they are entitled would be commensurate.

The order should be reversed and the complaint dismissed, without costs.

HERLIHY, J. (dissenting). We are considering here an issue vital to all persons owning property adjacent to or in view of a State highway.

The Superintendent of the New York State Department of Public Works, appellant, contends that pursuant to section 30 of the Highway Law he has the power of eminent domain to restrict the use of respondents' property adjacent to Route 17 with a " Permanent Easement Restricting Signs, Billboards, Notices, Posters, Advertising Devices or Other Displays."

If the right does exist it is, of couse, tantamount to the power to completely regulate roadside advertising along and within normal visual acuity of State highways.

The question presented is not whether certain roadside advertising constitutes a hazard to highway safety or whether the Superintendent has acted reasonably but is rather, has the Legislature delegated to the Superintendent of Public Works the power to condemn such an easement?

Section 30, relied upon by the Superintendent, provides no such authority. The specific language referred to as in support of appellant's position, i.e., " acquire by appropriation any and all property " necessary " to improve safety conditions on the state highway system " must be considered in context.

The section, as interpreted by the majority, gives to the Superintendent of Public Works, subject only to his intendment of what is reasonable, the right to invade private property whether adjacent to or remotely removed from the road itself.

Section 30 was substantially changed by chapter 544 of the Laws of 1944. Included as part of the omnibus amendment was the " safety " reference. The pertinent part of section 30 has not been changed since its amendment in 1944 and it reads as follows:

" § 30. Acquisition by the state of property required for the construction and reconstruction of state highways and structures thereon. * * *

" 2. The superintendent of public works, for and in behalf of the people of the state of New York may acquire by appropriation any and all property necessary for the construction, reconstruction and improvement of state highways and bridges or culverts on the state highway system, including the appropriation of property for drains, ditches, spoil banks, gravel pits and stone quarries; also for the removal of obstructions, improvement of sight distances; also for appropriation of property for the reconstruction of existing highway-railroad separation structures and for the separation of highway-railroad grades on newly laid-out highways; *and for other purposes to improve safety conditions on the state highway system.*" (Emphasis added.)

In context the emphasized portion clearly refers to such acquisitions of property for safety purposes as would be concordant with takings for construction and reconstruction of State highways as implied in the title of the section. An examination of the background of the 1944 amendment readily demonstrated that this was its purpose. The bill was a departmental bill proposed by the Department of Public Works. In a mem-

orandum, contained in the Governor's Bill Jacket, from the Superintendent of Public Works and the Commissioner of Highways submitted to the Governor's counsel recommending approval of the bill, it was stated:

"This bill proposes to repeal the provisions for the acquisition of rights of way for state highways by counties, and also proposes to substitute the procedure for the acquisition of such property by the State.

\* \* \*

"The proposal in this bill is to authorize the Superintendent of Public Works to acquire by appropriation any property that he deems to be necessary *for the construction and reconstruction of a state highway and structures thereon.*" (Emphasis added.)

Similarly in reference to chapter 544, the Commissioner of Highways stated in the annual report of the Superintendent of Public Works for the year 1944: "This is the first time it has been possible for this Department to promulgate any definite highway program, because of the fact that heretofore the consummation of any program which might be instituted by the Department was entirely dependent upon the willingness and ability of the counties to acquire the necessary rights of way for the construction of the improvements. This insurmountable object to a planned program of work was eliminated in 1944 through the enactment of legislation which provides that the State shall acquire title to all rights of way needed in connection with State highway construction." (N. Y. Legis. Doc., 1945, No. 60, pp. 40–41; see, also, pp. 4, 23–25.)

There is no mention or suggestion that the Legislature by the amendment of section 30 ever intended to confer upon the Superintendent of Public Works the power to appropriate an easement restricting roadside advertising in the interest of highway safety.

It is well-established law that a statute conferring the power of eminent domain is not to be extended by inference or implication (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 293, pp. 335, 336; see *Society of N. Y. Hosp.* v. *Johnson,* 5 N Y 2d 102, 107; *Ontario Knitting Co.* v. *State of New York,* 205 N. Y. 409, 416).

The various cases cited by the majority are not controlling. *Matter of Bushwick Ave.* (48 Barb. 9) and *Matter of City of New York (Clinton Ave.)* (167 N. Y. 624) were governed by special acts of the Legislature giving the City of New York the necessary authority to widen and otherwise improve the streets involved.

*Fifth Ave. Coach Co.* v. *City of New York* (194 N. Y. 19) involved the exercise of police power, not the exercise of eminent domain.

An examination of the section and of the history surrounding it is conclusive that it was never intended to be used for the purposes suggested herein. If the majority is to be sustained then whether land borders on the road or is remotely removed but within normal visual acuity of the road is immaterial. The latter is a marked departure and a new perception of the rights of the State to restrict private property and seriously impinges upon constitutional guarantees. Such a concept was not contemplated within the ambit of section 30 (*supra*). The restriction and regulation of advertising devices within 500 feet of the edge of the pavement of the Thruway were accomplished by a specific act of the Legislature. (Public Authorities Law, § 361-a; L. 1952, ch. 593.)

There is no authority for the taking of the easement by eminent domain as here suggested by the majority and the order denying the motion to dismiss the complaint should be affirmed.

Coon, Gibson and Reynolds, JJ., concur with Bergan, P. J.; Herlihy, J., dissents and votes to affirm.

Order reversed and complaint dismissed, without costs.